GRIMES *v.* EVANS.

5-801                                                                                  285 S. W. 2d 510

Opinion delivered January 9, 1956.

*R. H. Peace,* for appellant.

*Claude E. Love,* for appellee.

LEE SEAMSTER, Chief Justice. The appellants prosecute this appeal from a decree of the Union Chancery Court, Second Division, which refused to declare certain deeds, absolute in form, to be mortgages and also refused to declare certain tracts of real estate to be held in trust by appellee for appellants.

The undisputed facts reveal that Hope Traylor, the father of appellants, purchased the south 92 feet of Lot 4, Block 1 of Simpson Addition to the City of El Dorado, Arkansas, from S. R. Morgan in 1925. On June 5, 1928, Hope Traylor obtained a loan in the amount of $500 from B. Davis. In consideration for this loan, Traylor

entered into an agreement with Davis, whereby, repayment of the loan would be made at the rate of $10 monthly, until the indebtedness was liquidated. As security for this loan, Davis required Traylor to execute and deliver to him, a mortgage on the above described property. Hope Traylor died, thereafter, without fully satisfying the amount of his indebtedness to Davis. On February 26, 1934, Davis filed a suit to foreclose the mortgage on the property, and shortly thereafter, the chancery court ordered the property to be sold on June 1, 1934, to satisfy the amount of the outstanding indebtedness on the mortgage. B. Davis submitted the highest bid for said property, whereby, the property was sold to him and a commissioner's deed was issued to him on June 11, 1934. The deed was recorded on June 12, 1934.

In order that Myra Traylor might save the homestead, B. Davis entered into a contract with Myra Traylor on September 17, 1935, whereby, she would pay him the sum of $400 for said property, of which $10 was paid in cash and a series of 39 notes were executed for the balance of $390, payable $10 monthly until the debt was liquidated. On the same date, B. Davis executed to Myra Traylor a sales contract or bond for title, binding himself to convey said property to her, upon payment of the above described indebtedness. Myra Traylor died in 1937, without fully satisfying the amount of the indebtedness.

On August 12, 1939, B. Davis conveyed the above mentioned lands by warranty deed to J. B. Evans, in consideration for the sum of $300. On the same day, August 12, 1939, the appellants herein, who were the occupants of the premises, executed a quitclaim deed to J. B. Evans relinquishing any interest that they might have in the property. The appellants continued to occupy the premises and made monthly payments of $10 each to J. B. Evans, until his death in 1949. Thereafter, the appellants made these monthly payments to Mrs. J. B. Evans, who was the sole beneficiary under J. B. Evans will until October of 1952, at which time Mrs.

Evans served notice upon appellants to vacate the premises.

The appellants filed the instant suit on November 12, 1954, claiming that J. B. Evans was holding the above described property in trust for them and they were entitled to have title declared in them; that the deeds executed by them in 1939 were given as a mortgage to secure a debt of $300, which debt has been fully satisfied. Upon trial of this cause, the chancellor dismissed the **appellants'** complaint for want of equity and quieted and confirmed title to the property in the appellee. On the appellee's cross-complaint, the chancellor found that appellants were tenants at will of appellee, whereby, judgment in the sum of $260 was awarded appellee, such amount representing 26 months rent owed by appellants. This appeal follows.

According to the testimony of the appellants, they entered into an oral contract with J. B. Evans, whereby, Evans loaned the appellants the sum of $300, with which to pay off an indebtedness on the property to B. Davis, in return for appellants promise to repay this amount in monthly installments of $10 each, with 10% interest until debt was liquidated. Appellants insist that J. B. Evans required them to execute to him a quitclaim deed to the property herein above described, said deed being dated August 12, 1939, and was given as security for repayment of the $300 loan. On the same date, B. Davis instead of executing the deed to appellants, did execute and deliver a deed to the property to J. B. Evans, who acquired title to the property for the specific purpose of holding this property in trust for appellants, until the $300 loan was repaid, at which time appellants allege that Evans agreed to reconvey the property to them. The appellants insist that payment was made in accordance with this oral agreement, until October of 1952, at which time they decided that an overpayment had been made on this loan and they refused to make any further payments and sought title to the property.

The testimony of the appellee Mrs. J. B. Evans was to the effect that J. B. Evans acquired title to the above

described property by an absolute sale of the property to him by B. Davis, on August 12, 1939. Appellee denied that J. B. Evans entered into an oral contract to reconvey the property to appellants and further testified that Evans did not loan the appellants the sum of $300. It is earnestly insisted that had Evans made this purported loan to appellants, they (appellants) would have personally liquidated their indebtedness to B. Davis and also would have procured title to the property in their own name, executing a mortgage to Evans to secure the loan.

The appellee further testified that appellants rented the property for $10 per month, and such payments were made from 1939 to September, 1952, a period of 13 years. In September of 1952, the appellants refused to make further rent payments, at which time the appellee served notice upon appellants to vacate the premises.

The testimony of Floyd Stein, an attorney who prepared all the deeds in question, corroborates the testimony that was adduced by appellee. Mr. Stein testified that he examined the title to the property for Mr. Evans, whereby, the examination revealed that said property was owned by B. Davis under and by virtue of a commissioner's deed executed on June 11, 1934. Stein further testified that he prepared a warranty deed to said property, which deed was executed before him as a notary public, conveying the property from B. Davis to J. B. Evans; that before he would approve the title to the property, he procured a quitclaim deed from appellants, since they were occupants of the premises; that the only reason for procuring a quitclaim deed from appellants, was to prevent any question being later raised by them that they were anything other than tenants at will of B. Davis. Mr. Stein also stated that the whole transaction was fully explained to all parties.

Appellants seek to reverse the decree of the trial court on the ground that this case calls for an application of the established rule in this State that a court of equity will treat a deed, absolute in form, as a mortgage, whenever executed for the loan of money or as security

for a debt. The general doctrine prevails in this State that the grantor may show that a deed absolute on its face was only intended to be a security for the payment of a debt and thus is a mortgage. Since the equity upon which the court acts arises from the real character of the transaction, any evidence, written or oral, tending to show this, is admissible. If there is a debt existing with a loan of money in advance, and the conveyance was intended by the parties to secure its payment, equity will regard and treat an absolute deed as a mortgage. However, the presumption arises that the instrument is what it purports to be; and, to establish its character as a mortgage, the evidence must be clear, unequivocal, and convincing. By this is meant that the evidence tending to show that the transaction was intended as security for debt, and thus to be a mortgage, must be sufficient to satisfy every reasonable mind without hesitation. See *Bailey* v. *Frank,* 170 Ark. 610, 280 S. W. 663; *Landers* v. *Denton,* 213 Ark. 87, 209 S. W. 2d 300; *Kerby* v. *Feild,* 183 Ark. 714, 38 S. W. 2d 308.

We do not think that the evidence is of that certain, unequivocal and convincing character that would authorize or justify a court of equity to treat the instruments as a mortgage instead of deeds. The oral testimony, when taken in consideration with the written instruments, renders it reasonably certain that it was the intention of the parties that the deeds should be absolute in fact, as well as in form.

After a careful consideration of the evidence, we are of the opinion that the decree of the chancery court was correct, and it will therefore be affirmed.