300 F.2d 617
 Leonard M. MOTHNER, J. Richard Mothner, Elise Sharp and Miriam Richard, Appellants,
v.
OZARK REAL ESTATE COMPANY, Stephens Production Company, Murphy Corporation, J. T. Stephens, W. R. Stephens and Vernon Giss, Appellees.
 No. 16728.
 United States Court of Appeals Eighth Circuit.
 March 13, 1962.
 
 Leonard L. Scott, of Eichenbaum, Scott & Miller and C. Richard Crockett, Little Rock, Ark., made argument for appellants. King, Sharfstein & Reinstra, Beaumont, Tex., were with them on the brief.
 William J. Wynne, of Crumpler & O'Connor, El Dorado, Ark., made argument for Stephens Production Company, Murphy Corporation, J. T. Stephens, W. R. Stephens and Vernon Giss and Thomas Harper, of Harper, Harper, Young, & Durden, Fort Smith, Ark., was with him on the brief.
 Sam Sexton, Jr., Fort Smith, Ark., made argument for Ozark Real Estate Company and was on the brief.
 Before SANBORN, MATTHES, and RIDGE, Circuit Judges.
 MATTHES, Circuit Judge.
 
 
 1
 In this action instituted in the United States District Court, Western District of Arkansas, appellants, plaintiffs below, seek to establish ownership of the oil and gas underlying certain real estate in Johnson County, Arkansas. The trial court found against plaintiffs and dismissed their complaint with prejudice. They have appealed. Diversity of citizenship and the amount involved establish jurisdiction.
 
 
 2
 Much of the evidence was documentary, other facts were stipulated, and oral testimony was offered. In summary, the pertinent facts are:
 
 
 3
 Prior to May 27, 1891, legal title to the subject lands was in J. Richard, who, on the date, with his wife, conveyed the premises, by deed, to M. H. Johnson, Trustee. On March 1, 1893, M. H. Johnson executed a deed of release to J. Richard in which the prior deed of May 27, 1891, was referred to as a mortgage. The deed of release conveyed to Richard "the surface and everything above the surface of the following described land, to wit:" (Land here involved is described). This instrument provided:
 
 
 4
 "But this release is not intended to affect the coal and minerals beneath the surface of said land, and the right of ingress and egress for the purpose of mining the coal upon the said land, and carrying the same away, is hereby reserved, including the right to build and maintain the necessary trams, roadways, buildings and machinery necessary for the purpose of getting out and carrying away the coal in said land, it being the object and intent of this instrument to release said land so far as may be necessary to authorize said Richard to sell and convey that portion thereof which may be necessary for agricultural purposes." (Emphasis supplied).
 
 
 5
 By deed executed on the same day (March 1, 1893), Richard, et ux. conveyed the property to L. F. Griffin, but expressly reserved "all Coal, Mineral, Oil, or Gas contained or found on or under said lands or any part thereof * * * together with the privilege of mining, digging for and removing same and to that end to have full and unrestricted ingress, egress and regress at all times on and over said lands * * *."
 
 
 6
 Thereafter, by deed dated February 4, 1897, Richard, his wife having died, conveyed to A. Stiewel all "coal and minerals lying on or under" the land in question "with all the privileges and agreement thereto appertaining and as set forth in a certain deed made by Julius Richard to L. F. Griffin dated the first day of March, 1893, * * *."
 
 
 7
 Following the latter transaction, and on April 11, 1903, M. H. Johnson, Trustee, et ux., by quitclaim deed conveyed the subject lands together with others to A. Stiewel and Stiewel by warranty deed dated April 11, 1906, conveyed the "coal and mineral" in the subject land to Consolidated Anthracite Coal Company. Appellee Ozark Real Estate Company by stipulation of the parties is the successor to whatever title Consolidated Anthracite Coal Company acquired from Stiewel. Ozark leased the oil and gas rights to appellee Stephens.
 
 
 8
 A chart which the plaintiffs have prepared has been helpful in showing the numerous conveyances and with slight modifications it has been reproduced and appears as an appendix to this opinion.
 
 
 9
 Appellants are the descendants and heirs of J. Richard, deceased, and as such they claim ownership of the gas and oil underlying the lands in question, asserting that Richard died seized and possessed of such gas and oil. To substantiate their claim, appellants advance these basic contentions: first, the deed from Richard to Johnson, Trustee, (May 27, 1891) was in fact a mortgage given to secure payment of a debt; that the debt was paid and title to the property reverted to Richard; second, that the deed of release from Johnson to Richard (March 1, 1893) which conveyed the "surface" only, must be construed as carrying with it oil and gas under the surface of the lands; third, that Richard expressly reserved "coal, mineral, oil or gas" in his conveyance to Griffin (March 1, 1893) and, fourth, that the deed from Richard to Stiewel (February 4, 1897) of all coal and minerals and the deed from Stiewel to Consolidated (April 11, 1906) did not include and convey "gas and oil."
 
 
 10
 Alternatively, plaintiffs claim that they are residuary legatees of A. Stiewel, deceased, and that if title to the gas and oil became vested in him either by virtue of the conveyance from Johnson to Stiewel or from Richard to Stiewel, they are by virtue of an agreement with other residuary devisees and other interested parties, owners of an undivided one-sixth interest in said oil and gas.
 
 
 11
 The trial centered on and brought into focus the legal effect of the various instruments above mentioned and in particular the deed from Richard to Johnson; the deed of release from Johnson to Richard; and the meaning of the term "coal and mineral" as used in the instruments. After due consideration, the court filed detailed findings of fact and conclusions of law. Additionally, at the conclusion of the trial, the court rendered an oral decision (appearing as a part of the record but not officially reported). The latter amplified the court's views as contained in the findings of fact and conclusions of law.
 
 
 12
 In summary, the court found that the deed from Richard to Johnson conveyed the fee simple title to the land; that the burden was upon appellants to prove that said deed was intended as a mortgage to secure a debt by clear, unequivocal and convincing evidence, and that the appellants had failed to discharge this burden; that subsequent to this deed there was never any reconveyance of the lands to Richard except for the release to him of the surface only for agricultural purposes and this instrument did not convey to Richard any title to any coal, oil, gas or other minerals in and under said lands; that by quitclaim deed of April 11, 1903, Johnson conveyed the title to all of said lands to Stiewel except the surface theretofore conveyed by Johnson to Richard, and that even if the deed of release from Johnson to Richard did convey the oil and gas which Richard reserved in his conveyance to Griffin, Richard thereafter unequivocally conveyed to Stiewel all the privileges and agreement reserved in Richard's deed to Griffin. Therefore, in any event, Stiewel wound up in 1903 with the fee simple title to the minerals, including oil and gas, whether by deed from Richard or Johnson, or both, and that since obviously Stiewel knew he had acquired the gas and oil in and under these lands and did not make any reservations in his deed to Consolidated Anthracite Coal Company in April, 1906, he divested himself of any title to anything he owned in the lands and vested fee simple title thereto in Consolidated. Thereafter Consolidated conveyed the title to Ozark Coal Company which in turn conveyed its title to appellee Ozark Real Estate Company subject to lease to Stephens. That inasmuch as Stiewel conveyed his entire interest in the lands to Consolidated, the appellants failed to establish their alternative claim of title as heirs of Stiewel.
 
 
 13
 The scope of our review and the standards to be applied on this appeal are firmly settled and clearly defined.
 
 
 14
 (1) We are proscribed from setting aside the findings of fact unless they are clearly erroneous. Rule 52(a) Federal Rules of Civil Procedure, 28 U.S. C.A. The Supreme Court of the United States in United States v. United States Gypsum Co., 333 U.S. 364, in considering the rule, stated at p. 395, 68 S.Ct. 525, at page 542, 92 L.Ed. 746: "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." The rule has been the subject of discussion in numerous cases decided by this Court. Only a few need be mentioned. In Dierks Lumber & Coal Co. v. Barnett, 8 Cir., 221 F.2d 695, 697, we said: "`The findings of fact of a trial court should be accepted by this Court as being correct unless it can be clearly demonstrated that they are without adequate evidentiary support or were induced by an erroneous view of the law.'" Like authority is to be found in Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, 137-138, and Weiby v. Farmers Mutual Automobile Insurance Co., 8 Cir., 273 F.2d 327, 329.
 
 
 15
 (2) Closely akin to the foregoing is the rule that in determining whether there is evidence to support the findings of the trial court we must view the evidence in the light most favorable to the prevailing party, here the appellees. United States v. Skolness, 8 Cir., 279 F.2d 350, 352-353.
 
 
 16
 (3) In a diversity case where local law controls, we do not formulate the law of the state. The time-honored standard to be applied is aptly stated in Dierks Lumber & Coal Co. v. Barnett, supra, 221 F.2d at p. 697:
 
 
 17
 "`The entire responsibility for deciding doubtful fact questions in a non-jury case should be, and we think it is, that of the district court. The existence of any doubt as to whether the trial court or this Court is the ultimate trier of fact issues in non-jury cases is, we think, detrimental to the orderly administration of justice, impairs the confidence of litigants and the public in the decisions of the district courts, and multiplies the number of appeals in such cases.'
 
 
 18
 * * * * * *
 
 
 19
 "It must be remembered that this Court is not an appellate court of the State of Arkansas, and establishes no rules of law for that State. The question for review in a case such as this is not whether the trial court has reached a correct conclusion, but whether it has reached a permissible one. See National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741; Kimble v. Willey, 8 Cir., 204 F.2d 238, 243, 38 A.L.R.2d 814; Guyer v. Elger, 8 Cir., 216 F.2d 537, 540-541."
 
 
 20
 Unlike numerous cases, we are not here concerned with unexplored local law. This is not a case of Arkansas law of first impression. The Supreme Court of that State has laid down rules, pertinent here, to be applied in construing deeds.
 
 
 21
 In Marshall v. Marshall, 227 Ark. 582, 300 S.W.2d 933, the Supreme Court of Arkansas reiterated a number of rules which are brought into play in determining the legal effect of a deed. Those pertinent here may be summarized as: (1) a deed absolute on its face is presumed to be what it appears to be, and one claiming that it is a mortgage has the burden of overcoming this presumption by clear, unequivocal and convincing evidence; (2) whether a deed absolute on its face is to be considered as such or as a mortgage requires the court to determine the intention of the parties at the time; (3) a deed should be strongly construed against the grantor; (4) the courts should receive with caution evidence to prove that "an instrument absolute on its face was intended by the parties" to be a mortgage. 300 S.W.2d at p. 936. Also see and compare Lawless v. Caddo River Lumber Co., 145 Ark. 132, 223 S.W. 395; Grimes v. Evans, 225 Ark. 770, 285 S.W.2d 510, 512. It is also now settled in Arkansas that the question of whether the word "mineral" as used in a deed included "oil and gas" is one of fact for determination by the court. Stegall v. Bugh (1958), 228 Ark. 632, 310 S.W.2d 251, where prior cases of Missouri Pac. R. Co. v. Strohacker, 202 Ark. 645, 152 S.W.2d 557, 563; Missouri Pac. R. Co. v. Furqueron, 210 Ark. 460, 196 S.W.2d 588; Carson v. Missouri Pac. R. Co., 212 Ark. 963, 209 S.W.2d 97, 99, 1 A.L.R.2d 784; Brizzolara v. Powell, 214 Ark. 870, 218 S.W.2d 728, 730, were considered and reviewed.
 
 
 22
 No useful purpose will be served in reviewing in detail all of the evidence, or in analyzing the many cases which have been cited by the parties. Such a course would result in a lengthy opinion but would contribute nothing to legal learning. The parties are fully conversant with all the relevant facts and circumstances. If others are interested they may resort to the record in this case.
 
 
 23
 The competency of Judge Miller, who tried this case, to rule upon questions involving Arkansas law is not open to debate. It is apparent from the Judge's formal findings of fact, conclusions of law and his oral opinion that he gave careful consideration to all of the evidence, and the issues that were litigated. We have independently examined and considered the evidence, and in light of the principles of law and rules of construction which govern, we are not convinced that Judge Miller's findings of fact are clearly erroneous or that they were induced by a misconception of the law; indeed, we are impelled to the view that the Judge reached not only a permissible conclusion, but a just and correct result.
 
 
 24
 So holding, we pretermit consideration of the question of laches and stale demands which was an issue in the trial and has been briefed on appeal. It is sufficient to observe that the trial court concluded that quite apart from the inability of appellants to recover because the parties through whom they claim had parted with title to the oil and gas, they were barred by the doctrine of laches and stale demands as recognized by the law of Arkansas.[1]
 
 
 25
 The judgment appealed from is in all respects
 
 
 26
 Affirmed. NOTE: OPINION CONTAINING TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 Notes:
 
 
 [1]
 On this phase of the case, in its conclusions of law, the Court stated: "The defendants have invoked the pleas of laches and stale demands, and both defenses are established by all the facts before the Court. Without holding plaintiffs are barred by the statute of limitations, it follows that plaintiffs and their predecessors cannot stand by and fail to assert any claim, which they either knew, or should have known, they had. Yet here we have a lapse of 67 years from the time plaintiffs state their claim accrued in 1893, and during all that time no move was made by anyone to assert this claim, notwithstanding the wide public interest in gas in the Arkansas Valley Area and in Johnson County, until after the defendants Stephens Production Company and Murphy Corporation, after an expenditure of over $350,000.00, incured at their sole risk, cost and expense, drilled and completed the aforesaid two gas wells."