BRIZZOLARA *v.* POWELL.

4-8748                                          218 S. W. 2d 728

Opinion delivered March 14, 1949.

Rehearing denied April 11, 1949.

Patterson & Patterson and Hill, Fitzhugh & Brizzolara, for appellants.

O. S. Blackburn and Wiley Bean, for appellee.

GEORGE ROSE SMITH, J. Appellee brought this action to quiet her title to the oil and gas underlying forty acres in Johnson county. She derives title from the grantee of a conveyance executed by the Little Rock & Fort Smith Railway on October 27, 1897. In that deed the railway company reserved all coal and mineral deposits, the reservation being the same as the one construed in Mo. Pac. R. Co. v. Strohacker, 202 Ark. 645, 152 S. W. 2d 557.

A separate assessment of the "mineral rights" in this land was made in 1907, under Act 30 of 1897. When the railway company failed to pay the taxes in 1911, these mineral rights forfeited to the State. In 1921, the State conveyed to appellants all its "right, title, interest and claim" to the mineral rights only. Appellants have paid taxes on the minerals ever since their purchase, while it is conceded that the appellee "owns the surface and has paid the taxes."

This appeal is from a decree quieting appellee's title to the oil and gas. Appellants first contend that appellee had the burden of proving that the term "mineral rights" was not intended to include oil and gas

when the separate assessment was made in 1907. Since appellee offered no evidence on this point, appellants conclude that the assessment must be taken to have included oil and gas; so they claim title thereto through their purchase from the State. But there is a fallacy in their reasoning. The statute permitted the separate assessment only of mineral rights which had been separated from the surface ownership. If the 1897 reservation did not extend to oil and gas, then the taxes assessed against the surface included the tax upon these unsevered minerals. It being fundamental that a tax sale is void if the taxes have actually been paid, it is evident that appellants cannot have acquired a valid tax title to oil and gas upon which the taxes were being annually paid by the owner.

The argument is made that appellants' tax deed was color of title to the oil and gas, since it purported to convey the mineral rights. The appellants, having paid taxes on mineral rights for more than seven years, rely on Ark. Stats. (1947), § 37-102, as a basis for asserting title to the oil and gas. But the statute refers to wild and uninclosed land, indicating a legislative intention to distinguish such property from improved or inclosed land. The legislature undoubtedly had in mind the visible surface characteristics of land in its popular sense. Since minerals within the earth are not susceptible of inclosure, we conclude that the statute does not apply to this species of property.

In oral argument counsel for appellants advanced a claim to adverse possession of the gas in question. In 1931 the supposed owners of the gas underlying 2,400 acres, including the forty claimed by appellee, entered into a voluntary pooling agreement by which this total acreage was to be developed as a unit for the production of gas. Appellants signed this agreement, while the appellee did not. It is indicated that producing gas wells were drilled in the vicinity of appellee's land. The argument is that these wells drained gas from appellee's property; so she was put on notice of appellants' adverse possession. But even if it could be said that appellants'

participation in the pooling agreement amounted to the exercise of dominion over the property, there was nothing to put the appellee on notice. The State's deed to the mineral interest is not in her chain of title. And the fact that a well drilled on adjacent land may withdraw gas from the depths of his own property can hardly require a reasonable man to investigate the possibility that an interloper may have joined in a pooling agreement purporting to include all land drained by the well. (It is possible that the rule might be different if the neighboring well had been drilled in accordance with a finding of the Oil and Gas Commission that such a well *would* drain surrounding property, necessitating the formation of a drilling unit; but that situation is not presented.)

To this point we have assumed, as do the parties, that the rule of the *Strohacker* case governs the construction of the railway company's reservation. No attempt is made to impair the authority of that case, nor would the attempt be successful. The ruling was followed in *Mo. Pac. R. Co.* v. *Furqueron,* 210 Ark. 460, 196 S. W. 2d 588, and *Carson* v. *Mo. Pac. R. Co.,* 212 Ark. 963, 209 S. W. 2d 97, 1 A. L. R. 2d 784, though with increasing dissents. But it has become a rule of property on which have been founded innumerable important transactions. To change the rule now would invalidate many titles acquired upon faith in the original decision. Consequently, regardless of our individual views as to the merits of the *Strohacker* rule, it is the unanimous opinion of the court that it has become a rule of property which should not be disturbed.

But the parties as well as the chancellor seem to have overlooked the point that the rule deals with a question of fact rather than of law. The *Strohacker* opinion held that in the deed there construed, executed in 1892, the same language as is now before us did not as a matter of fact express an intention to reserve oil and gas. The *Furqueron* case, on similar proof, ruled that this same intention prevailed as to another Iron Mountain conveyance in 1894. Here, however, the ques-

tion involves the intent with which these words were used in a different deed in 1897. At the trial neither party offered proof on this point, as every one assumed that the earlier cases were decisive. The chancellor based his decision on that assumption. Thus the case, tried upon an erroneous theory, was not fully developed. We have discretion in determining whether an equity case should be reopened for additional proof. *Nakdimen* v. *Atkinson Imp. Co.,* 149 Ark. 448, 233 S. W. 694. Here we think it best to remand so that the facts may be ascertained.

Reversed and remanded.