STEGALL *v.* BUGH.

5-1449                                    310 S. W. 2d 251

Opinion delivered February 3, 1958.

[Rehearing denied March 17, 1958]

*Spencer & Spencer,* for appellant.

*Mahony & Yocum, Crumpler & O'Connor, J. S. Brooks, B. L. Allen* and *Sam Pickard,* for appellee.

PAUL WARD, Associate Justice. The question for decision is: Do the words ''except the mineral interest in

said lands," following the description in a warranty deed, include oil and gas under the peculiar facts and circumstances of this case? The trial judge held that the words did not include oil and gas, and appellant prosecutes this appeal to reverse said holding.

The issue arose in the manner presently set forth. A summary statement will suffice because there is little, if any, dispute over facts which we deem essential. On November 6, 1900, B. H. Stegall and his wife (parents of appellant) executed a warranty deed conveying 120 acres of land in Section 23, Township 17 South, of Range 14 West, Union County, to one M. F. Goodwin. The deed contained the *exception* clause as mentioned above. Appellant is now the owner of the mineral rights reserved under the above deed, and appellees claim an interest in the oil and gas as remote grantees of the said M. F. Goodwin.

Appellant's main contention is that B. H. Stegall, at the time he executed the deed to Goodwin in 1900, understood the word *"mineral"* to include oil and gas. To prove that B. H. Stegall had such understanding, appellant introduced evidence to the effect that, in 1900, there appeared traces of oil or a substance resembling oil on several springs (called "oil springs") on or near the land conveyed. It was also shown by testimony that B. H. Stegall was careful to select a scrivener to prepare a deed that would reserve to him the oil and gas. There was other testimony from all of which the trial judge might have been justified in finding that B. H. Stegall actually meant to reserve all rights to oil and gas when he executed the deed in question.

Based on the above testimony showing the intention of B. H. Stegall to reserve oil and gas rights at the time he executed the deed in 1900, appellant relies on language used by this court in the case of *Brizzolara* v. *Powell,* 214 Ark. 870, 218 S. W. 2d 728, for a reversal. In considering a similar *exception* in the cited case, we said that "the question involves the intent with which these words were used," etc. From the quoted language and other similar language found in the cited case, ap-

pellant appears to conclude that the "intent" of the grantor is controlling here. Expressed another way, appellant's argument appears to be that, based on the *Brizzolara* case, *supra,* it is our duty to determine from the testimony just what B. H. Stegall had in mind when he used the word *"mineral"* in the *exception* in the conveyance to Goodwin. We do not agree that this is a correct interpretation of the holding in the *Brizzolara* case, *supra,* or of the holdings in similar decisions to which that case makes reference and which we will mention presently. We think that the meaning which this court has heretofore and should hereafter give to the word *"mineral,"* in connection with its use in situations similar to those of this case, is governed not by what the grantor meant or might have meant, but by the general legal or commercial usage of the word at the time and place of its usage. The testimony in the case under consideration justified the trial court, we think, in finding that the word *"mineral,"* in its accepted legal and commercial usage, did not include oil and gas in Union County in 1900. This testimony was to the effect that there was no oil production in Union County until about 20 years after the deed in question was executed and that the word *"minerals,"* as commonly used in Southern Arkansas and in Union County in 1900 would not have included oil and gas. A geologist with the Arkansas Oil & Gas Commission for about 6 years stated that the first showing of oil in Union County was in 1920; that in 1900 there was no oil produced in East Texas, or Northern Louisiana; that the understanding of the people engaged in the oil business in 1900 and until 1919 was that there would never be any production in the southern part of Arkansas, and; that the word *"minerals,"* from the standpoint of the oil industry in Union County during the above mentioned period would not have included oil and gas.

The conclusion which we have reached above is, we think, consistent with and supported by former decisions of this court, to which we wish to make only brief reference.

*Missouri Pacific R. Co., Thompson, Trustee,* v. *Strohacker,* 202 Ark. 645, 152 S. W. 2d 557. This case dealt with deeds, executed in 1892 and 1893, conveying lands in Miller County, which excepted ''all coal and *mineral* deposits.'' We held these words did not include oil and gas, but, in doing so, said: ''If the reservations had been made at a time when oil and gas production, or explorations, were general, and legal and commercial usage had assumed them to be within the term *'minerals,'* certainly appellant should prevail.'' The court found however, from testimony which it is not necessary to restate, that such usage was not shown. The rule of interpretation (of the word *''mineral''*) employed by the court in reaching the decision it did is shown by these expressions used or quoted with approval: ''. . . the best and surest method of expounding an instrument is by referring to the time when, and the circumstances under which it was made,'' and ''The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it.''

*Missouri Pacific Railroad Company, Thompson, Trustee,* v. *Furqueron,* 210 Ark. 460, 196 S. W. 2d 588. This case construed the same *exception* language contained in a deed executed in 1894 which conveyed land also in Miller County. It was there held that the questioned language did not include oil and gas. We followed the *Strohacker* case, *supra,* although we were specifically urged to over-rule it.

*Carson* v. *Missouri Pacific Railroad Company, Thompson, Trustee,* 212 Ark. 963, 209 S. W. 2d 97. There the deed in question was executed in 1892 and the reservation was ''all coal and *mineral* deposits . . .'', and we held, following the reasoning in the *Strohacker* and *Furqueron* cases, *supra,* that *Bauxite* was not included. Among other things the court pointed out: ''We conclude that the rule announced in the *Strohacker* case, *supra,* as well as the unreasonableness, under the circumstances, of the construction asserted by appellee, requires a holding that *bauxite* was not in the contempla-

tion of the parties to the contract when this reservation of *mineral* rights was made.''

*Brizzolara* v. *Powell, supra.* Here all the cases mentioned above were referred to and all were unanimously approved by this court. It was stated that the holdings in these cases had ''become a rule of property on which have been founded innumerable important transactions.'' The deed under consideration there was executed in 1897.

The deed (containing the *exception*) under consideration was executed only 7 years after the deed in the *Strohacker* case, *supra,* and only 3 years after the deed in the *Brizzolara* case, *supra.* There is no testimony by appellant tending to show any change in oil and gas development or in the general usage of the word *''minerals''* during the indicated interval of time. We see no reason therefore why we should not here follow the rule announced in the cases heretofore mentioned.

Affirmed.

McFADDIN, J., dissents.

ED. F. McFADDIN, Associate Justice, dissenting. I think the time has come when this Court should declare that by January 1, 1900, it was generally considered and understood that oil was a *mineral.* Such conclusion prompts the dissent.

Because of our decisions in the Strohacker case[1] and others since then, as herein mentioned, there has been left open the question as to when oil (i.e. petroleum) came to be generally considered in Arkansas as a mineral. Oil may be of three kinds: animal, vegetable, or mineral. Webster's Dictionary so states concerning ''oil.'' The kind of oil we are considering in this case is *mineral* oil; and the other word for *mineral* oil is *petroleum*,[2] which itself comes from two Latin words—petra, meaning rock; and oleum, meaning oil—so petroleum means rock oil. The question is this:

---

[1] *Mo. Pac.* v. *Strohacker,* 202 Ark. 645, 152 S. W. 2d 557.
[2] See the word "petroleum" in Webster's New International Dictionary, Second Edition, Unabridged.

in 1900 was petroleum generally considered in Arkansas to be a mineral? I say it was.

Certainly, petroleum was considered a mineral (a) by the man who made the deed here involved; and (b) by the oil fraternity generally; and (c) by the world at large as a matter of general information. I will demonstrate:

(a)  The deed here in question was dated November 6, 1900, from B. H. Stegall to M. F. Goodwin; and immediately following the description of the land in the granting clause, there was this language: "`. . . except the mineral interest in said lands. . . .`" The evidence shows that Mr. Stegall, the grantor, lived in Union County and understood that oil was a mineral. He discussed with many people the possibility of oil and gas within the area of his land and told them that some day oil would be produced in Union County; and these conversations were before 1900. When he sold the lands here involved to Mr. Goodwin on November 6, 1900, Mr. Stegall told the grantee that he wanted to reserve all of the oil. The grantee agreed and stated that all he wanted was the surface rights. Mr. Stegall spent several days looking for someone who knew how to make a mineral reservation; and the person drawing the deed used the language, "except the mineral interest in said lands." Of course, the test is not what was in the mind of the grantor, but what was the general understanding of the words; so my first point is that the grantor, living in Union County in 1900, understood that oil was a mineral.

(b)  The next point is that prior to 1900 the oil fraternity generally understood that oil (i.e. petroleum) was a mineral. The record here before us shows that as early as 1887 and 1888 there were reported traces of oil in wells drilled in Sebastian County, Arkansas;[3] that oil had been discovered in Louisiana before 1900; and that gas had been discovered in East Texas as early as 1868. The record shows that in 1895 and 1896 oil had been developed in commercial quantities in the fields in Corsicana, Texas. If

[3] In the Arkansas Historical Quarterly, Vol. 16, p. 335 (issue for the Winter of 1957) there is a splendid article by Annie Laurie Spencer of El Dorado, Arkansas, entitled, "Arkansas' First Oil Refinery"; and that article is well worth reading.

people in Sebastian County, Arkansas, and in North Louisiana, and in Corsicana, Texas, considered oil as a mineral in the years mentioned, why should the oil fraternity of Union County, Arkansas, be considered to be less intelligent?

(c) Then, there is the matter of *general information*. Publication of the Ninth Edition of the Encyclopedia Britannica was completed in 1889; and in Vol. 18 of that edition, beginning on page 72, there is an article of several pages on the subject of petroleum, which is called "rock oil." Likewise, in the same Ninth Edition of the Encyclopedia Britannica (publication completed in 1889) there is in Vol. 16 at pages 346 to 431, an exhaustive article on the subject of "Mineralogy," which is the study of *minerals*. It is there stated on page 346: "Mineral bodies occur in the three physical conditions of solid, liquid, and gas." Then on page 430 of the same volume—in the index of minerals—petroleum is listed as Mineral No. 707; and on page 428, in discussing "petroleum," it is again listed as a mineral. Let it be remembered that it was in 1889 that the *Ninth Edition* of the Encyclopedia Britannica completed its publication; and copies of this edition have been in Arkansas since before 1900. So, I make the point that by January 1, 1900, petroleum was considered as a mineral by general information; and we should now so declare.

The importance of such a declaration is apparent when we consider our cases. In the *Strohacker* case (*Mo. Pac.* v. *Strohacker, 202* Ark. 645, 152 S. W. 2d 557) this Court was construing a deed made in 1892 which used this language, ". . . reserving all coal and mineral deposits in and upon said lands. . . ." We held that in 1892 oil (i.e. petroleum) was not considered a mineral. This Court said:

"If the reservations had been made at a time when oil and gas production, or explorations, were general, and legal or commercial usage had assumed them to be within the term 'minerals,' certainly appellant should prevail. As early as 1911 gas was referred to in this state as a mineral. *Osborn* v. *Arkansas Territorial Oil & Gas Company, 103* Ark. 175, 146 S. W. 122. See, also, *Bodcaw Lumber Com-*

*pany* v. *Goode,* 160 Ark. 48, 254 S. W. 345, 29 A. L. R. 578, where Ruling Case Law, and Thornton on the Law Relating to Oil and Gas, are quoted.''

The Strohacker decision was rendered on May 26, 1941; and the only effect of the Strohacker decision was to say that in 1892 oil was not considered generally in Arkansas to be a mineral. The opinion did say that as of the date of its rendition, ''. . . it can no longer be doubted that a reservation of minerals or of mineral rights is sufficient to identify oil and gas. . . .'' So the opinion officially recognized that by 1941 everybody knew that oil and gas were minerals.[4] The question left open in the Strohacker case was when—as between 1893 and 1911—oil and gas came to be generally recognized in Arkansas as *minerals.*

The next case on reservations was the Furqueron case, decided on October 7, 1946 (*Mo. Pac.* v. *Furqueron,* 210 Ark. 460, 196 S. W. 2d 588). That case involved a deed dated December 12, 1892, and used the same language as that in the Strohacker case: so, naturally, the decision in the Strohacker case carried over to the decision in the Furqueron case.

The next case on reservations was the Carson case, decided February 23, 1948 (*Carson* v. *Mo. Pac.,* 212 Ark. 963, 209 S. W. 2d 97). That case involved the question of whether bauxite was embraced within the word ''minerals'' on August 21, 1892; so that case does not bear on the petroleum question here involved, except that the majority opinion in the Carson case construed the holding in the Strohacker case in the following language:

''In the Strohacker case it was shown that oil was discovered in the United States in Pennsylvania on August 29, 1859; later, in 1860, in Kansas; in Colorado in 1862, in Wyoming in 1867, in California in 1875, in Indian Territory in 1891, and in Texas in 1887; and that the possibility of existence of oil in Arkansas was recognized as early as 1885. The earliest reported case, involving oil or gas in

---

[4] In *McLaughlin* v. *Ford,* 168 Ark. 1108, 273 S. W. 707 (decided June 8, 1925), this Court (in a statement not essential to the holding) said: "The discovery of oil and gas and other minerals. . . ."

Arkansas, was decided in 1911. Under this factual situation we held in the Strohacker case that recognition of oil and gas as minerals was not sufficiently general in this part of the country in 1892 to authorize a holding that these deposits were contemplated in the reservation used in the deed of the railroad company involved in that case.''

The fourth case to which I refer is the Brizzolara case, decided March 14, 1949 (*Brizzolara* v. *Powell,* 214 Ark. 870, 218 S. W. 2d 728). That case involved a deed executed in 1897 containing the same worded reservation as in the Strohacker case. We remanded the Brizzolara case to the Trial Court for further development, because we wanted proof as to what was the understanding generally in this State in October, 1897, as to whether oil was a mineral. We said this in the remand:

''But the parties as well as the chancellor seem to have overlooked the point that the rule deals with a question of fact rather than of law. The Strohacker opinion held that in the deed there construed, executed in 1892, the same language as is now before us did not as a matter of fact express an intention to reserve oil and gas. The Furqueron case, on similar proof, ruled that this same intention prevailed as to another Iron Mountain conveyance in 1894. Here, however, the question involves the intent with which these words were used in a different deed in 1897. At the trial neither party offered proof on this point, as every one assumed that the earlier cases were decisive. The Chancellor based his decision on that assumption. Thus, the case, tried upon an erroneous theory, was not fully developed. We have discretion in determining whether an equity case should be reopened for additional proof. *Nakdimen* v. *Atkinson Imp. Co.,* 149 Ark. 448, 233 S. W. 694. Here we think it best to remand so that the facts may be ascertained.''

Thus, this Court put itself on record as saying that there must be some date fixed as to when oil (i.e. petroleum) became generally considered in Arkansas to be a mineral. I think it is important that we set a date; and I think the date should be set at January 1, 1900. This case shows to me that when the deed here involved was executed in November, 1900, (a) that the man executing the deed

understood it reserved minerals; (b) that the oil fraternity operating in nearby sections understood that oil was a mineral; and (c) that the Encyclopedia Britannica listed petroleum as a mineral. The time has come when we should do away with uncertainty in this matter; and I think January 1, 1900, is the date to fix.