**Arvil R. SINGLETON, Plaintiff,**

v.

**MISSOURI PACIFIC RAILROAD CO., a Missouri Corporation, and Gulf Oil Corporation, a Pennsylvania Corporation, Defendants.**

**No. LR-60-C-158.**

United States District Court
E. D. Arkansas, W. D.

May 15, 1962.

J. Kenton Cochran, Russellville, Ark., for plaintiff.

R. Ben Allen, Little Rock, Ark., for defendant, Missouri Pac. R. Co.

Heartsill Ragon, Fort Smith, Ark., for defendant, Gulf Oil Corp.

HENLEY, Chief Judge.

This is an action to establish plaintiff's claimed ownership of the oil, gas, and petroleum distillate underlying a 40-acre tract of land in Pope County, Arkansas, to cancel an oil and gas lease covering said lands and executed by defendant Missouri Pacific Railroad Company (hereinafter Railroad) to the defendant Gulf Oil Corporation (hereinafter Gulf), and to cancel a certain "Declaration of Pooling" affecting the oil and gas underlying said lands. Defendants deny that plaintiff is entitled to the relief sought by him, it being defendants' contention that by virtue of a reservation in the original deed from the Railroad to plaintiff's predecessor in title there were reserved to the Railroad all minerals, including oil, gas, and distillate, underlying

the area in controversy, and that the lease from the Railroad to Gulf was and is a valid lease.[1]

The cause has been tried to the Court and has been submitted on the pleadings, a stipulation with accompanying exhibits filed by the parties, testimony taken *ore tenus,* and written briefs. This memorandum incorporates the Court's findings of fact and conclusions of law.

The property here involved, consisting of 40 acres, is described as the Northeast Quarter of the Southwest Quarter of Section 36, Township 9 North, Range 22 West, Pope County, Arkansas. The land lies on Whorton Mountain in the extreme western portion of Pope County, which county is bordered on the west in this area by Johnson County.

The above described lands were patented to the Railroad's corporate predecessor by the United States Government, and remained the property of the Railroad until March 20, 1934, when the Railroad conveyed the tract to one Riley Martin, plaintiff's predecessor in title. Plaintiff obtained title by mesne conveyances from Martin in 1946.

The deed from the Railroad to Martin contained the following reservation in favor of the grantor, its successors, and assigns:

" * * * reserving to the said Missouri Pacific Railroad Company and to the said Trustee, Missouri Pacific Railroad Company, Debtor, and each of their successors and assigns, all the minerals, upon, in or under said land or any part thereof, together with the right to enter upon said land, or any part thereof, and explore, dig, mine or drill for and remove minerals supposed to be in, upon, or under the said land or any part thereof, and to erect, place, use, occupy and enjoy upon said land or any part thereof, such road and ways, structures, buildings, pipe lines, tools, implements or machinery as may be proper, necessary or convenient in or about the exploring, digging, mining or drilling for or removal of any minerals, without any claim for damages on behalf of said second party or assigns."

Taking the position that the quoted reservation included oil and gas underlying the lands in question, the Railroad on July 2, 1957, executed and delivered to Gulf an oil and gas lease conveying the property. The lease had a primary term of five years and was to remain in force for so long thereafter as oil or gas "is or can be produced from said land or land with which said land is pooled hereunder."

In 1959 Gulf, acting under its lease, drilled a well in search of oil and gas. The search was successful, and in March 1959 a producing gas well was completed which had an open-flow potential of 2,750,000 cubic feet per day.[2]

On January 13, 1959, prior to drilling its well, Gulf obtained a "surface lease" from the plaintiff for a recited consideration of five dollars. This lease which was to remain in force as long as the oil and gas lease from the Railroad to Gulf should continue gave to Gulf

" * * * the right to use the leased premises for the production, saving, taking care of and transporting of oil and gas produced under the aforesaid oil and gas lease, and also for the purpose of constructing roads, pipelines and other fixtures or facilities incident to the purposes of this lease, with the right of in-

1. The case was commenced in the Chancery Court of Pope County and was removed to this Court by the defendants on the basis of diversity of citizenship. Plaintiff filed a motion to remand in connection with which it was contended that although there is a producing gas well now located on the property in suit, the amount in controversy is less than $10,-000. A hearing was held on the motion, testimony was heard, and the motion was denied.

2. Gulf's lease covered other lands in the vicinity, and certain of those other lands appear to have been pooled with the 40-acre tract in controversy so as to constitute a drilling unit of requisite size.

gress and egress to and from the leased premises."

Under the terms of the surface lease Gulf was obligated to pay for all damages to the surface of the lands occasioned by its operations under the oil and gas lease, and Gulf agreed that it would bury its pipelines to a sufficient depth to avoid interference with normal agricultural uses of the property. Gulf was given the right within the term of the surface lease or within sixty days after its termination to remove any and all pipelines and other facilities and fixtures which it might place upon the property under the surface lease.

It is the theory of the plaintiff that the reservation in the 1934 deed from the Railroad was limited to solid minerals, principally coal and that the reservation did not extend to or cover oil, gas or distillate. In this connection the original complaint alleges:

"V.

"That when said reservations were written into the deed, it was not intended by the term, 'all minerals' to include gas, oil and distillate.

"That the intention of the reservation of 'all minerals' by the Missouri Pacific Railroad Company's management was to protect said railroad company against the reservations contained in the Acts of the Congress in granting said lands to Missouri Pacific Railroad Company's predecessor in title, and was intended by said management to be a broad and general classification, and that at said time the said deed was executed that oil and gas and distillate were not within the contemplation of the parties in the reservation of 'all minerals'.

"VI.

"That during the year, 1934, oil and gas and distillate were not given the slightest commercial considera-tion in connection with the land values in Pope County, Arkansas, and were not within the meaning of the words, 'all minerals'.

"VII.

"That the language in reservation of the aforedescribed conveyance of 'all minerals' was not sufficient to reserve the oil, gas and distillate, in, under, and that might be produced from plaintiff's aforedescribed lands.

"That the said reservation of 'all minerals' did not include gas, oil and distillate, and said reservation is ambiguous and void.

"That if it had been intended to reserve oil, gas and distillate in said reservations, it should have been done explicitly."

And, in an amendment to his complaint [3] plaintiff alleged that in 1934 neither oil, gas, nor distillate had been discovered in Section 36, Township 9 North, Range 22 West, "nor in the neighborhood thereof;" that little was known about oil, gas or distillate in the "neighborhood, territory or vicinity where the lands conveyed were situated;" that plaintiff himself knew nothing about oil, gas or distillate in the vicinity of the lands in question as of 1934 and that the substances just mentioned were not considered "a mineral" in the vicinity of the lands conveyed to him, that term being commonly understood and thought of as coal; and that "only in recent months has oil, gas and distillate in Section Thirty-six (36) where the lands above described are located, become known generally as a mineral and had substantial commercial value."

In resisting the claim of plaintiff the defendants take the position that the reservation in the 1934 deed was intended to include and did include oil, gas and distillate, that in 1934 those substances were considered minerals in the general area where the lands in question are lo-

3. Filed in the State court after the case was removed to this Court and brought into the record by defendants in connec-tion with their opposition to plaintiff's motion to remand.

cated, and that the existence or possibility of existence of oil and gas in place had an effect on market values and was considered by buyers and sellers negotiating for the purchase and sale of real property.

In addition, defendants assert that plaintiff was aware that the Railroad claimed the oil, gas and distillate, if any, underlying his lands; that plaintiff was aware of the existence of the oil and gas lease to Gulf, and, as stated, had executed a surface lease to Gulf permitting it to utilize the surface of his lands in connection with its drilling operations, and had stood by and observed the expensive drilling and completion of the well without making any objection thereto or asserting any claim to or interest in underlying petroleum products. Thus defendants contend that in the circumstances plaintiff is estopped to claim ownership of the oil, gas and distillate or to question the validity of Gulf's lease.

The prayer of the answer is for a dismissal of the complaint or, in the alternative, "that if plaintiff is determined to be the owner of any interest in oil, gas and distillates, that defendants have judgment against plaintiff for the proportionate share of all monies expended by defendants in developing said property; that defendants be declared to have a lien on the property * * * to secure the payment of such judgment; that if the same be not paid within a reasonable time to be fixed by this Court, said property be sold to satisfy the same; and for all other proper relief."

The question of whether a mineral reservation appearing in a Missouri Pacific Railroad Company deed which does not specifically mention oil and gas[4] is broad enough to include those substances is not a novel one in Arkansas. The governing principles have been laid down authoritatively in Missouri Pacific R. Co.

v. Strohacker, 202 Ark. 645, 152 S.W.2d 557; Missouri Pacific R. Co. v. Furqueron, 210 Ark. 460, 196 S.W.2d 588; and Brizzolara v. Powell, 214 Ark. 870, 218 S.W.2d 728.[5]

Strohacker and Furqueron, supra, involved lands located in Miller County in Southwest Arkansas. The railroad deeds were executed in 1892 and 1893, long prior to the time that oil and gas had achieved any commercial importance in that section of the State. The reservations were as follows:

"Reserving all coal and mineral deposits in and upon said lands with the right to (grantor) its successors, and assigns at any and all times to enter upon said lands and to mine and remove any and all coal and mineral deposits found thereon without any claim for damages on behalf of (grantee) his heirs or assigns."

In both cases it was held that oil and gas were not within the contemplation of the parties when the railroad deeds were executed and that the reservations did not include the substances in question. Strohacker was decided in 1941 and Furqueron in 1946. In the Furqueron case counsel for the railroad specifically requested the Supreme Court of Arkansas to overrule Strohacker, but the Court refused to do so.

The Strohacker, Furqueron, and Carson cases, supra, were well summarized by the Supreme Court of Arkansas in Stegall v. Bugh, 228 Ark. 632, 310 S.W.2d 251. It was there said (pp. 635–636 of 228 Ark., at p. 253 of 310 S.W.2d 251):

"Missouri Pacific R. Co. [Thompson, Trustee] v. Strohacker, 202 Ark. 645, 152 S.W.2d 557, 563. This case dealt with deeds, executed in 1892 and 1893, conveying lands in Miller County, which excepted 'all coal and *mineral* deposits'. We held these

---

4. For brevity and convenience no further mention of "distillate" will be made in this opinion.

5. See also Carson v. Missouri Pacific R. Co., 212 Ark. 963, 209 S.W.2d 97, 1

A.L.R.2d 784, which involved the question of whether bauxite was included in a reservation of "all coal and mineral deposits."

words did not include oil and gas, but, in doing so, said: 'If the reservations had been made at a time when oil and gas production, or explorations, were general, and legal and commercial usage had assumed them to be within the term *"minerals"*, certainly appellant should prevail.' The court found however, from testimony which it is not necessary to restate, that such usage was not shown. The rule of interpretation (of the word *'mineral'*) employed by the court in reaching the decision it did is shown by these expressions used or quoted with approval: '* * * the best and surest method of expounding an instrument is by referring to the time when, and the circumstances under which it was made', and 'The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it.'

"Missouri Pacific Railroad Company [Thompson, Trustee] v. Furqueron, 210 Ark. 460, 196 S.W.2d 588. This case construed the same *exception* language contained in a deed executed in 1894 which conveyed land also in Miller County. It was there held that the questioned language did not include oil and gas. We followed the Strohacker case, supra, although we were specifically urged to over-rule it.

"Carson v. Missouri Pacific Railroad Company [Thompson, Trustee], 212 Ark. 963, 209 S.W.2d 97, 99, 1 A.L.R.2d 784. There the deed in question was executed in 1892 and the reservation was 'all coal and *mineral* deposits * * *', and we held, following the reasoning in the Strohacker and Furqueron cases, supra, that *Bauxite* was not included. Among other things the court pointed out: 'We conclude that the rule announced in the Strohacker case, supra, as well as the unreasonableness, under the circumstances, of the construction asserted by appellee, requires a holding that *bauxite* was not in the contemplation of the parties to the contract when this reservation of *mineral* rights was made.' "

In Brizzolara v. Powell, supra, the Court pointed out that the Strohacker decision had been followed with increasing dissent in Furqueron and Carson, but that the rule laid down therein had become a "rule of property" and would be adhered to regardless of what the Court might then think of its merits. The Court held, however, that the Strohacker rule deals with a question of fact rather than of law. It was said (pp. 873–874 of 214 Ark., at p. 730 of 218 S.W.2d):

"But the parties as well as the chancellor seem to have overlooked the point that the rule deals with a question of fact rather than of law. The Strohacker opinion held that in the deed there construed, executed in 1892, the same language as is now before us did not as a matter of fact express an intention to reserve oil and gas. The Furqueron case, on similar proof, ruled that this same intention prevailed as to another Iron Mountain conveyance in 1894. Here, however, the question involves the intent with which these words were used in a different deed in 1897. At the trial neither party offered proof on this point, as every one assumed that the earlier cases were decisive. The chancellor based his decision on that assumption. Thus the case, tried upon an erroneous theory, was not fully developed. * * * (W)e think it best to remand so that the facts may be ascertained."

And in the very recent case of Mothner v. Ozark Real Estate Co., 8 Cir., 300 F.2d 617, the Court of Appeals said, "It is also now settled in Arkansas that the question of whether the word 'mineral' as used in a deed included 'oil and gas' is one of fact for determination by the court."

■ While in Strohacker, Furqueron, Carson, and Brizzolara the Supreme

Court of Arkansas referred to the "intent of the parties" as being determinative of the scope of the reservations under consideration, the later case of Stegall v. Bugh, supra, makes it clear that this does not mean the subjective ideas of individual grantors or grantees as to what minerals were being reserved in particular deeds. Rather, the intent of the parties is to be determined objectively, and the scope of the reservation is to be measured "by the general or commercial usage" of the word "mineral" at the time and place of its usage in a particular deed. Stegall v. Bugh, supra, p. 634 of 228 Ark., p. 253 of 310 S.W.2d

When the evidence is viewed in the light of the principles above stated, the Court is convinced and finds that for a number of years prior to 1934 the leasing of lands in the western portion of Pope County, including lands lying in Section 36, Township 9 North, Range 22 West, for oil and gas purposes was quite common, and that the production of natural gas in western Pope County and in Johnson County was well established on a commercial basis.

It is a well known fact that when oil and gas activity, including the leasing of lands for the purpose of drilling for oil and gas, becomes common in a given area, the people in that area soon incorporate oil and gas into their concept of "minerals," and the term "minerals" comes to be understood in common speech as including oil and gas. In view of the oil and gas activity which was going on in the general area in question prior to 1934, the Court finds that in 1934 the term "minerals," in common speech and usage in that area, had come to include oil and gas, and to the extent that plaintiff's evidence is to the contrary it cannot be accepted by the Court. It follows

from this finding that oil and gas were included in the reservation appearing in the deed to plaintiff's predecessor.[6]

Not only is the Court persuaded that by 1934 the general and commercial concept of minerals in the area in question included oil and gas, but also the Court is of the opinion that the particular reservation with which the Court is concerned is so worded as to indicate that the parties to the 1934 deed in fact considered that the reservation included oil and gas, and that the same were excluded from the grant to plaintiff's predecessor.

The reservation here involved appears in a deed of much later date than those of the deeds which were before the Supreme Court of Arkansas in the cases which have been mentioned, and the reservation itself is a broader reservation. The reservations before the Supreme Court in the Strohacker, Furqueron, Carson, and Brizzolara cases all referred to "coal and mineral deposits." That language would invite the application of the ejusdem generis rule in the construction of the reservations so as to limit the scope thereof to solid minerals. Here, the reservation broadly covers "all minerals."

Further, the instant reservation retains for the benefit of the Railroad the right not only to explore, dig, mine and remove minerals, but also the right to "drill for" minerals; and among the installations which on the strength of the reservation might be put on the lands are "pipe lines." The inclusion of the right to drill and of the right to install pipe lines strongly indicates that the parties had in mind liquid or gaseous minerals, such as oil and gas, as well as solid minerals.

Since the Railroad reserved to itself the oil and gas underlying plaintiff's lands when it conveyed the property to

6. In the course of the trial the Court received certain documentary evidence tendered by defendants over the objection of plaintiff that the evidence in question was irrelevant and incompetent. The Court bases its findings herein on evidence which it deems to be relevant and competent, and which, in the Court's estimation, establishes the existence of oil and gas activities which would be of general notoriety in the general vicinity of the lands in question and of the existence of which the general body of the populace could hardly have been ignorant.

plaintiff's predecessor, the Railroad had the right in 1957 to execute the oil and gas lease to Gulf, and Gulf had the right to enter upon the lands and exercise its rights under the lease.

The view which the Court takes as to the scope of the reservation renders it unnecessary to pass upon defendants' plea of estoppel or to consider defendants' alternative prayer for relief.

The complaint, as amended, will be dismissed with prejudice at plaintiff's cost.