362 F.2d 48
 WESTERN COAL AND MINING COMPANY, a Corporation, and the
Missouri Improvement Company, a Corporation, and
the Missouri Pacific Railroad Company, a
Corporation, Appellants'
v.
Robert J. MIDDLETON, Robert E. Middleton, Richard B.
Griffin, and Bradley W. Kidder, Appellees.
 No. 18181.
 United States Court of Appeals Eighth Circuit.
 June 17, 1966.
 
 1
 John T. Williams, of Smith, Williams, Friday & Bowen, Little Rock, Ark., for appellants. William J. Smith, Little Rock, Ark., and Mark M, Hennelly, St. Louis, Mo., were with him on the brief.
 
 
 2
 Thomas B. Pryor, of Dobbs, Pryor & Dobbs, Fort Smith, Ark., for appellees. G. Byron Dobbs, Fort Smith, Ark., was with him on the brief.
 
 
 3
 Before MATTHES and GIBSON, Circuit Judges, and HUNTER, District Judge.
 
 
 4
 HUNTER, District Judge.
 
 
 5
 This is a diversity action. Appellants are Missouri corporations, with their principal place of business in St. Louis, Missouri, and appellees are citizens of the State of Arkansas, residing in Sebastian County. The dispute presented concerns the ownership of the gas and oil lying under a 320-acre tract of land located in Sebastian County, Arkansas. The particular issue is whether the words 'other minerals' in a deed executed on April 2, 1904, in Sebastian County include oil and gas. The District Court found they did not, and entered judgment accordingly.
 
 
 6
 The background circumstances are that on April 2, 1904, Franklin Bache and Nannie T. Bache, who owned 320 acres of land located just south of Fort Smith, Arkansas, conveyed by deed 'all and singular the coal, fire clay and other minerals contained within the underlying' 320-acre tract to Western Coal and Mining Company. Appellee, Robert J. Middleton for the purposes of this suit is the stipulated owner of the 320-acre tract, subject only to such rights as appellants may have in the tract and its underlying minerals. Appellant Missouri Improvement Company is the present holder of the interest acquired by Western Coal and Mining Company.
 
 
 7
 The District Court, in a well-reasoned opinion reported at 241 F.Supp. 407 (W.D., Ark. 1965), held that although the business community regarded oil and gas as a valuable mineral, the common and commercial usage of the terms 'mineral' and 'other minerals' in Sebastian County did not include oil and gas on April 2, 1904. The appellants contend this holding of the District Court is clearly erroneous.
 
 
 8
 In this diversity action the substantive law of the State of Arkansas governs our decision. Mothner v. Ozark Real Estate Company, 300 F.2d 617 (C.A. 8th, 1962). The question of whether such words as 'other minerals' contained in a deed concerning Arkansas land which was executed around the turn of the century include gas and oil has been before the Arkansas Supreme Court upon several occasions, the last time being after this appeal was submitted. In its latest decision, Ahne v. The Reinhart and Donovan Co., 240 Ark. 691, 401 S.W.2d 565 (April 18, 1966), the Arkansas Supreme Court approvingly reviewed the same earlier decisions relied upon by the District Court, and stated, loc. cit. 696, 401 S.W.2d 568: 'In our most recent decision involving construction of an instrument containing reservations, Stegall v. Bugh, supra,[1] relied upon by both parties to the appeal, we adhered to the principles of construction of such instruments announced in Missouri Pac. R.R. Co. v. Strohacker, supra.[2] Thus for the past twenty-five years it has been the settled rule of this court that, where there is ambiguity as to minerals actually embraced in instruments purporting to convey or to reserve certain unspecified minerals under generalized terms as to minerals, a fact question is presented as to the true intent of the parties; and in such cases the contemporary facts and circumstances surrounding the execution of the instrument are admissible in evidence on the question. Furthermore, the intent of the parties will be determined so as to be consistent with and limited to those minerals commonly known and recognized by legal or commercial usage in the area where the instrument was executed.' The Arkansas Supreme Court concluded that on the record before it, the chancellor's findings that gas was a commonly recognized mineral in Logan County on July 26, 1905, was not against the preponderance of the evidence.
 
 
 9
 Among the cases reviewed and approved in the Ahne decision is the landmark case, Missouri Pacific R.R. Co., Thompson, Trustee v. Strohacker, 202 Ark. 645, 152 S.W.2d 557 (1941). That case held that deeds executed in 1892 and 1893 in Miller County reserving 'all coal and mineral deposits' did not constitute a valid reservation of oil and gas minerals, for the reason that such substances were not commonly recongnized as minerals in Miller County at the time of the execution of the deeds. The Strohacker decision, loc. cit., 561, 152 S.W.2d at p. 561 stated: 'If the reservations had been made at a time when oil and gas production, or explorations, were general, and legal or commercial usage had assumed them to be within the term 'minerals', certainly appelant should prevail.'
 
 
 10
 In Stegall v. Bugh, 228 Ark. 632, 310 S.W.2d 251 (1958), the Court had for its consideration a deed executed in 1900 conveying 120 acres in Union County, Arkansas. The deed exception clause provided, 'except the mineral interest in said lands.' The trial court held the quoted words did not include oil and gas. The Arkansas Supreme Court affirmed saying, loc. cit. 253, 310 S.W.2d at p. 253, 'We think that the meaning which this court has heretofore and should hereafter give to the word 'mineral', * * * in its accepted legal and commercial usage, did not include oil and gas in Union County in 1900.' And in Mothner v. Ozark Real Estate Co., 300 F.2d 617, we affirmed the District Court's finding of fact that the use of the words 'coal and mineral' did not include oil and gas in an 1891 conveyance of property in Johnson County, Arkansas.
 
 
 11
 Thus, where as here, there is ambiguity in the deed, the problem presented involves a question of fact to be decided by the trial court in each instance. As provided in Rule 52, F.R.Civ.P., in all actions tried upon the facts without a jury, findings of fact shall not be set aside unless clearly erroneous. The Supreme Court of the United States in United States v. United States Gypsum Co., 333 U.S. 364, at page 395, 68 S.Ct. 525, at page 542, 92 L.Ed. 746 (1947), in considering the rule stated, 'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' This is the standard set for our review.
 
 
 12
 All of the evidence is in the form of exhibits. There was no testimony as to the legal or commercial usage of the words 'other minerals' in 1904.
 
 
 13
 The numerous exhibits may be generally classified in five categories: (1) Contemporary (around 1904) publications, including almanacs, city directories and newspaper articles; (2) Publications or books on the oil and gas industry in Arkansas; (3) A large number of oil and gas leases made at various times between about 1888 and 1910; (4) The articles of incorporation of a number of corporations that were interested in oil or gas; (5) City ordinances. We have carefully examined all of these exhibits, but because of their nature and number, we will not endeavor to discuss them individually. We have concluded from our review of them that the District Court's finding that the common and commercial usage of the terms 'mineral' and 'other minerals' in Sebastian County on April 2, 1904, did not include oil and gas is not clearly erroneous.
 
 
 14
 No exhibit states either directly or indirectly that such words as 'other minerals' in the legal and commercial usage of the times and the locality here involved included gas or oil. Appellants particularly rely on that category of evidence dealing with leases. The District Court's opinion ably describes and discusses this type of evidence and we quote from it, 241 F.Supp. loc. cit. 423: 'The record contains numerous oil and gas leases executed prior to the execution of the deed under consideration. An examination of the abstracts and summaries of these leases, which are Exhibits 27A, 27B, 27C, 28, 28A, 29 and 30, reflects that the parties, in expressing their intention to grant any interest in oil and gas, used the specific terms. For example, Exhibit 28 is an abstract of a deed recorded in Book S, page 274, filed December 15, 1887, in the Records of the Fort Smith District of Sebastian County, Arkansas, and is a mineral lease of W. H. Rogers to the Fort Smith Natural Gas & Power Company. The mineral granting clause states: 'does hereby bargain, sell and convey unto the said second party all the Stone, Coal, Oil, Gas, Salt Water and other minerals or volatile substances that may underlie the following described tract.' Exhibit 27 is a mineral lease by S. A. Hodges to Choctaw Oil Company recorded in Book 26 at page 507 in the records of the Greenwood District of Sebastian County, filed May 1901, which grants to the Choctaw Oil Company 'the exclusive right to prospect, bore and mine for lead, zinc, iron, coal, gas, oil and other minerals on said land.' Exhibit 28A is an abstract of a mineral lease of Messrs. Bocquin and Reutzel to the Fort Smith Natural Gas & Power Company, recorded in Deed Book U, page 465, of the records of the Fort Smith District of Sebastian County, Arkansas, filed January 3, 1888. The granting clause uses the following language in the mineral conveyance: 'the exclusive right to test, open, mine and remove said coal, oil, gas, salt water or other mineral or volatile substances, and further grants the right to construct railroads, underground entries, and all necessary buildings and fixtures to facilitate the mining and removing of said coal, oil, gas, salt water and other minerals of volatile substance.'
 
 
 15
 'Exhibits 30 and 31 are mineral leases executed in 1906 which is, of course, subsequent to the execution of the deed in question. The granting clauses, as abstracted in these exhibits, also specifically use the words 'oil and gas'. The summaries heretofore referred to, as well as the granting clauses in the instruments set out above, affirmatively establish that the parties to instruments creating or granting an interest in oil and gas in this area at the time the instant deed was executed did not express an intention to convey oil and gas by the mere use of the terms 'minerals' or 'other minerals,' but specifically used the term 'oil and gas' where there was an intention to grant an interest in these minerals.' We think that the District Court reached a permissible conclusion on this point.
 
 
 16
 From other exhibits introduced in evidence concerning the history of oil and gas in Arkansas it appears that only sixteen wells had been drilled in that state at any time prior to April 2, 1904, and that only two of them were productive to any appreciable extent prior to the discovery of the Massard Prairie field on November 5, 1904. Exhibit 25, titled, 'Arkansas' National Resources-- Their Conservation and Use' by Bartholomew and Branner, 1942, stated, 'Natural gas was first discovered in the Arkansas Valley in 1887 in Fort Smith, but there was no commercial production until 1902 when two wells were brought in near Mansfield, Sebastian County.' Exhibit 13, the Arkansas Almanac for 1964 at page 222, states, 'A few showings of natural gas occurred near Fort Smith as early as 1888, but the first commercial gas production in the state was near Mansfield, in Sebastian County, where gas was discovered May 23, 1901.' The total estimated production of the Mansfield field was at most 140 acres.
 
 
 17
 The March, 1902, Mansfield well apparently was not even mentioned in the 1903 Plat Book nor in the newspaper exhibits presented. It did not develop into anything more than a supply of gas for two small communities serviced by the single 'discovery well'. There is no evidence that adjacent landowners produced or endeavored to produce oil or gas in 1903 or 1904. The activity of this lone well of March, 1902, was deemed by the District Court to be insufficient to establish the incorporation of oil and gas into the legal or commercial usage of the word 'mineral' on April 2, 1904, and we are not convinced the District Court erred in that conclusion. The evidence indicates that the gas industry began to flourish when the Choctaw No. 10, the 'discovery well' of the Massard Prairie field, came in on November 5, 1904. Gas flowed in 1905 through a pipeline to Fort Smith From Massard Prairie field, where gas was discovered in 1904. However, this was after the deed we have before us. Exhibit 14 lists at least five wells on which drilling was either begun or completed in 1905, at least 14 wells on which drilling was either begun or completed in 1906 and at least 20 wells on which drilling was either begun or completed in 1907. The inference from the evidence before us is that the April 2, 1904, deed predated the beginning of the flourishing of the natural gas and oil industry in Arkansas by some six or seven months.
 
 
 18
 This inference is in accordance with that which the other categories of evidence permissibly bear. The newspaper articles affirm the discovery of natural gas in 1888 in Fort Smith as earlier mentioned. The city ordinances granted gas franchises in Fort Smith, Mansfield and Huntington, Arkansas. The articles of incorporation of various oil and gas companies, mostly between 1888 and 1903, generally recite that the purpose of the particular gas and oil company included prospecting and drilling for gas and other named minerals followed by the words 'other minerals'. Noticeably absent are the articles of incorporation of grantee, the Western Coal and Mining Corporation. None of this is necessarily persuasive that gas and oil were commonly recognized as a mineral on April 2, 1904, in Sebastian County to the extent that by the use of the word 'minerals' in a deed gas and oil were thereby included; nor that the common commercial usage of the terms 'minerals' or 'other minerals' at that time and place included gas and oil.
 
 
 19
 For the reasons aforesaid we conclude that the finding and judgment of the District Court that the deed in question did not convey oil or gas is in accord with Arkansas law, is supported by substantial evidence, and is not clearly erroneous. The judgment of the District Court is affirmed.
 
 
 
 [1]
 288 Ark. 632, 310 S.W.2d 251 (1958)
 
 
 [2]
 202 Ark. 645, 152 S.W.2d 557 (1941)