# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-1985

_____

EnerVest Operating, LLC, formerly     \*
doing business as CDX Gas, LLC,     \*
    \*
        Plaintiff/Appellee,     \*
    \*
Andromeda Partners, LP; Jack R.     \*
Crissup; Deborah M. Crissup; Ream     \*
Interests, Inc.; Anadarko Petroleum     \*     Appeal from the United States
Corporation,     \*     District Court for the
    \*     Western District of Arkansas.
        Defendants/Appellees,     \*
    \*
      v.     \*
    \*
Sebastian Mining, LLC, also known as     \*
Shriram Sebastian, LLC,     \*
    \*
        Intervenor defendant/     \*
        Appellant.     \*

_____

Submitted: January 9, 2012
Filed: April 27, 2012

_____

Before WOLLMAN, LOKEN, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

This case involves the property rights to coal bed methane gas ("CBM") produced from certain lands located in Sebastian County, Arkansas. CBM is a form of natural gas, comprised primarily of methane, that forms in coal beds and may exist in the form of a free gas, of a gas dissolved in the water in coal, or of a gas adsorbed on the surface of the coal. The original holder of fee simple absolute title to the lands ("Grantor") conveyed surface and coal rights in 1965 via an instrument the parties refer to as the Garland Deed. Sebastian Mining, LLC ("Coal Owner") acquired those rights effective April 30, 2010. However, three years before the grant of the coal rights, in 1962, the Grantor had conveyed an undivided one-half interest in all oil, gas, and other mineral rights except coal via an instrument known as the Wheeler Deed. In 1976, the Grantor conveyed its second undivided one-half interest via an instrument known as the Texas & Pacific Deed. Anadarko Petroleum Corporation; Andromeda Partners, LP; Jack R. Crissup; Deborah M. Crissup; and Ream Interests, Inc. (collectively "Gas Owners") are the successors-in-interest to the rights the Grantor conveyed in the Wheeler and Texas & Pacific Deeds. EnerVest Operating, LLC entered into various oil and gas leases and contracts with the Coal Owner and Gas Owners to produce CBM from the lands and initiated this interpleader action seeking a ruling as to whether the Coal Owner or the Gas Owners are entitled to the CBM royalties. The parties moved for summary judgment on a stipulated record that includes the Wheeler, Garland, and Texas & Pacific Deeds. The district court[1] held that the Grantor conveyed the CBM rights to the Gas Owners and, therefore, that the Gas Owners were entitled to the CBM royalties. We affirm.

We review *de novo* the district court's grant of summary judgment on a stipulated record, *Kessler v. Nat'l Enters., Inc.*, 238 F.3d 1006, 1011 (8th Cir. 2001), as well as its construction of legal documents and interpretation of state law, *see Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1023 (8th Cir. 2010). Our jurisdiction

---

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

in this case is based on diversity of citizenship, and the parties agree that we are to apply Arkansas law. *See Kaufmann v. Siemens Med. Solutions USA, Inc.*, 638 F.3d 840, 843 (8th Cir. 2011). Thus, unless the outcome of the case is dictated by Arkansas precedent, we "must attempt to predict what [the Arkansas Supreme Court] would decide if it were to address the issue." *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011).

In construing a deed for real property, Arkansas law requires that we determine the objective intention of the Grantor by "examining the language used [in the deed] and putting ourselves as nearly as possible in the position of the parties to the deed." *Shinn v. Shinn*, 623 S.W.2d 526, 527 (Ark. 1981); *see also Stegall v. Bugh*, 310 S.W.2d 251, 254 (Ark. 1958) (McFaddin, J., dissenting) (agreeing with the majority that "the test is not what was in the mind of the grantor, but what was the general understanding of the words"). "The best guide to interpretation of terms used in any instrument is the ordinary meaning of the words themselves, in their own context." *Pollock v. McAlester Fuel Co.*, 223 S.W.2d 813, 814 (Ark. 1949). Each claimant bears the burden of proof in establishing its respective interest. *See Carson v. Mo. Pac. R.R. Co.*, 209 S.W.2d 97, 98-99 (Ark. 1948).

Looking first to the plain language of the deeds, each deed carves the coal rights out as a narrow exception to an otherwise broad conveyance to the Gas Owners of all rights to oil, gas, and other mineral resources ("general mineral rights"). The 1962 Wheeler Deed conveyed an undivided one-half interest in "all of the oil, gas and other minerals" but expressly reserved "all coal rights . . . to the Grantor." Three years later, the Garland Deed conveyed "the surface and coal" rights to the Coal Owner but "reserved unto the Grantor . . . all bauxite, oil, gas and all other minerals . . . and mineral rights of whatever nature or description, kind or character, like or unlike, and whether occurring in solid, liquid, vaporous, or other and different forms." In addition to this express reservation, of course, any grant of rights in the 1965 Garland Deed could not also validly convey the same rights that were

previously conveyed in the 1962 Wheeler Deed. *See Nash v. Griffin*, 295 S.W. 399, 400 (Ark. 1927) (holding that because the owner had already conveyed the land, "there was nothing left to be conveyed"). Finally, the 1976 Texas & Pacific Deed conveyed to the Gas Owners the Grantor's second undivided one-half interest "in the oil, gas and other minerals, EXCEPT coal."

The contrast between the narrow grant of coal rights and the broad grant of general mineral rights is especially stark in the Garland Deed, from which the Coal Owner's rights derive. In addition to specifying that the general mineral reservation extends to liquids and vapors, the Garland Deed expressly reserved "any substance which is embraced within the meaning of the word 'mineral' as that term is now employed in the legal or commercial usage in the vicinity of the land conveyed hereunder," as well as any substance included in such legal and commercial usage in the future.[2] Not only is the reservation in favor of the Gas Owners much broader than the conveyance to the Coal Owner, but CBM easily falls within the plain meaning of the general mineral rights reserved to the Gas Owners.[3] Putting ourselves in the

---

[2]Even if Arkansas law prohibits the conveyance as "minerals" of substances that come to be known as minerals in the "legal or commercial usage in the vicinity" only at some future time, as the Coal Owner argued before the district court, this language nonetheless demonstrates the Grantor's objective intent to reserve a broad spectrum of rights to the Gas Owners, in contrast to the narrow grant to the Coal Owner.

[3]A classic definition of a mineral is "a solid homogeneous crystalline chemical element or compound (as diamond or quartz) that results from the inorganic processes of nature," but the term can be used more broadly to include substances such as coal, petroleum, water, or natural gas. Webster's Third New International Dictionary of the English Language Unabridged 1437 (1961). Whereas coal is a "solid combustible mineral substance formed by the partial decomposition of vegetable matter," CBM falls squarely within the definition of natural gas, a "gas issuing from the earth's crust through natural openings or bored wells," especially a combustible mixture of methane and other hydrocarbons. *Id.* at 432, 1507.

"position of the parties to the deed," the fact that the three deeds consistently define the general mineral rights broadly and the coal rights narrowly supports this reading. We agree with the district court that the "language in these deeds is clear," the objective "intent of the parties . . . is equally clear" that the Coal Owner would enjoy only a narrow right to coal while the Gas Owners would enjoy a broad spectrum of rights to oil, gas, and all other minerals, and CBM "fits squarely within that broad spectrum of rights reserved by the Grantor in the Garland coal deed at the time the deed was executed."[4]

The Coal Owner contends that the parties could not have intended to transfer CBM as part of the general mineral rights because, although CBM was known to exist at the times the deeds were executed, it was not thought to have economic value at those times. *See Mo. Pac. R.R. Co. v. Strohacker*, 152 S.W.2d 557 (Ark. 1941). However, known commercial value for a substance is just one factor in evaluating whether the substance was included in the general legal and commercial usage of the terms in the deeds. *See id.* at 563. Moreover, whether a substance was included in the general legal and commercial usage of the terms in the deeds is a question of fact that becomes relevant only when the intention of the parties is not clear from the language of the deeds. *See Brizzolara v. Powell*, 218 S.W.2d 728, 730 (Ark. 1949).

---

[4]Because we conclude that the deeds evince a clear intent to convey the CBM rights as part of the broad conveyance to the Gas Owners of oil, gas, and other mineral rights, we do not reach the question of whether Arkansas law would presume that CBM inheres in the coal estate or the gas estate. *Cf. Cimarron Oil Corp. v. Howard Energy Corp.*, 909 N.E.2d 1115, 1122 (Ind. Ct. App. 2009) ("The parties have agreed that neither contemplated in 1976 that technological advances would permit production of CBM for commercial gain. Accordingly . . . [w]e are asked by the parties to determine presumed intent as a matter of law."); *Energy Dev. Corp. v. Moss*, 591 S.E.2d 135, 146 (W. Va. 2003) (holding that "in the absence of specific language to the contrary *or other indicia of the parties' intent*, an oil and gas lease does not give the oil and gas lessee the right to drill into the lessor's coal seams to produce coalbed methane gas" (emphasis added)).

The ultimate question remains whether the language of the deeds in the context of the parties' position evinces an intent to convey the rights in question. Here, as discussed above, the plain language of the deeds at issue evinces an intent to convey to the Gas Owners a broad spectrum of oil, gas, and other mineral rights with the sole exception of the mineral coal, and CBM falls squarely within that broad spectrum of rights.

The Coal Owner's reliance on *Strohacker* and its progeny also is unpersuasive because its interpretation of the *Strohacker* rule would not resolve the question of which deed conveyed the CBM rights in any event. *Strohacker* and its progeny do not prohibit a *conveyance* of a substance not then known as valuable in general legal and commercial usage, but rather these cases limit solely the grantor's ability subsequently to claim an implicit *reservation* of such substances. *See Strohacker*, 152 S.W.2d at 563 (holding that a reservation of "minerals" to the grantor in the deed in question did not reserve petroleum because petroleum was not considered a mineral in the general legal and commercial usage of the word at the time and in the vicinity of the conveyance); *see also Stegall v. Bugh*, 310 S.W.2d 251, 253 (Ark. 1958) (same); *Mo. Pac. R.R. Co. v. Furqueron*, 196 S.W.2d 588, 589 (Ark. 1946) (same). The parties agree that the Grantor conveyed the CBM rights by at least one of the three deeds, and the Coal Owner contends that CBM lacked commercial value when each of the deeds was executed. In the 1962 Wheeler Deed, the Grantor's CBM rights either must have been included in the coal rights that were reserved to the Grantor or in the general mineral rights, the first half of which were conveyed to the Gas Owners in that deed. If we accept the Coal Owner's assertion that *Strohacker* categorically prohibits reservations of rights to substances not then known to have commercial value, we would have to find that the Grantor could not have implicitly reserved CBM with the coal rights by the Wheeler Deed. After the Grantor conveyed the first half of the CBM rights to the Gas Owners by the Wheeler deed, of course, the Grantor could not then convey those same rights to the Coal Owner by the subsequent Garland Deed. The Coal Owner does not contend that it received only the

second half of the CBM rights, and the Grantor's conveyance by the Texas & Pacific Deed of the second half of the general mineral rights casts doubt on any such argument. Thus, the Coal Owner's invocation of *Strohacker* ultimately cannot help its cause.

The Coal Owner next argues that the parties could not have intended to separate ownership of CBM from coal because CBM production requires drilling into the coal seams and fracturing the coal, making subsequent coal mining more dangerous and lowering the value of the coal rights. The Coal Owner relies on other judicial opinions that address the issue of damage to the coal rights from CBM production based on the record made in those cases. *See, e.g.*, *Cimarron Oil Corp. v. Howard Energy Corp.*, 909 N.E.2d 1115, 1118 (Ind. Ct. App. 2009); *Energy Dev. Corp. v. Moss*, 591 S.E.2d 135, 145 (W. Va. 2003). Although we cannot properly review the extent of damage to the coal rights at issue here from evidence that does not appear in the record, we note that the Coal Owner has cited no evidence or authority even purporting to establish that CBM production would eviscerate the value of the coal rights and completely frustrate the objective intent of the parties in conveying the coal rights in the Garland Deed. *See Carson*, 209 S.W.2d at 99 (construing a mineral reservation to exclude bauxite in part because open-pit bauxite mining "would destroy the value of the land for farming purposes, or any other purpose," and the position of the parties indicated that the property was intended by the parties to be used as a "farm home"). Furthermore, the Gas Owners' right to extract CBM is limited in that any damage they cause to the coal rights must be both necessary and reasonable. *See Amoco Prod. Co. v. S. Ute Indian Tribe*, 526 U.S. 865, 879 (1999) (interpreting federal common law); *see also Diamond Shamrock Corp. v. Phillips*, 511 S.W.2d 160, 163 (Ark. 1974) (holding that the owner of a mineral estate has a right to reasonable and necessary use of the surface for developing minerals because an "injury necessarily inflicted in the exercise of a lawful right does not create a liability" (quoting 10 Thompson on Real Property § 5561 (1940))). Thus, the

Coal Owner's arguments regarding the problems of separating the CBM rights from the coal rights are insufficient to overcome the language of the deeds.

Finally, the Coal Owner contends that the district court erroneously assumed that the original Coal Owner would "have gladly shed the burden of making sure the gas was extracted from the coal" since CBM was valueless at the time of the deeds. The Coal Owner contends that, to the contrary, Arkansas law at the time of the deeds required the Coal Owner to ventilate CBM from the mine and, therefore, granted it the property rights to CBM by virtue of law. A legal obligation "to dissipate the CBM gas where reasonable and necessary to mine the coal does not, however, imply the ownership of the gas in the first instance," but merely reflects the coal owner's right "to use, and even damage, a neighboring estate as necessary and reasonable to the extraction of his own minerals." *Amoco*, 526 U.S. at 879. The Coal Owner may vent or collect CBM depending on which option is both reasonable and necessary, and this choice may turn on whether the economic value of the CBM exceeds the cost of collecting it as compared to venting it. Because the legal obligation to vent does not include a right to profit from the vented substance, the Coal Owner's legal obligation to vent CBM in the course of coal extraction does not legally require that the CBM rights be conveyed with the coal rights, nor does it establish that the objective intent of the parties must have been to do so.[5]

For the foregoing reasons, we affirm.

———————————————————

———————————

[5]The Coal Owner has not argued that collecting CBM in the course of coal extraction, as opposed to venting it, would violate Arkansas law.