Rosa THOMAS et al., Plaintiffs,

v.

MARKHAM & BROWN, INC. and Missouri City Stone Company, Defendants.

No. LR–71–C–234.

United States District Court,
E. D. Arkansas, W. D.

Jan. 31, 1973.

Jeff Davis, Jr., Little Rock, Ark., for plaintiffs.

Leon B. Catlett, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This cause has been tried to the Court and submitted on the pleadings, discovery material, oral testimony, documentary evidence, and post-trial memorandum briefs. This memorandum opinion incorporates the Court's findings of fact and conclusions of law.

There is diversity of citizenship between the plaintiffs, on the one hand, and the defendants, on the other hand. While defendants' pleadings deny that the amount in controversy is in excess of $10,000, exclusive of interest and costs, that contention is not argued in defendants' brief, and the Court finds from the record before it that the jurisdictional amount requirement of 28 U.S.C.A., section 1332 is met. Hence, federal jurisdiction is established.

The case involves the construction of a mineral reservation appearing in a 1953 conveyance by plaintiffs of a tract of land in Pulaski County, Arkansas, to the defendants' predecessors in title. The land is located in the Fourche Mountain area of that County a few miles south of the City of Little Rock and near the Sweet Home community.

The conveyance was a warranty deed conveying eight acres of land in fee reserving to the grantors, however, "One/Fourth (¼) of all Oil, Gas and Mineral Rights in and to said lands." The specific question is whether that reservation extends to and affects stone deposits on and under the conveyed lands or a portion thereof. Since they acquired title, defendants have been quarrying and selling stone from the property, and have refused to account to plaintiffs for any part of the proceeds of such sales. Plaintiffs say that under the above quoted reservation they are the owners of an undivided one-fourth interest in the stone and are entitled to damages for the defendants' alleged conversion of the stone or the proceeds of sales thereof. The defendants deny that the reservation in the deed extends to the stone in question. The rights of the parties are governed, of course, by the substantive law of Arkansas.

The stone with which the Court is concerned is a form of granite and is referred to variously in the record. In 1890 the then Arkansas State Geologist, Dr. James C. Branner, named the stone "pulaskite" because of its occurrence in Pulaski County, and he described and discussed the stone, its properties, and uses in great detail in his annual report for that year. The Annual Report of the Geological Survey of Arkansas for 1890, Chapter IV, pp. 33 et seq. The stone consists principally of silicon dioxide and the oxides of iron and aluminum; other oxides also are present.

Pulaskite, to use Dr. Branner's name for it, has a variety of commercial uses. It is a valuable building material and has been incorporated into a number of buildings in Little Rock, including the Pulaski County Courthouse and St. Andrew's Cathedral. It is useful in road building, as railroad ballast, as a component of roofing material, and for other purposes including riprap work along rivers, which is the purpose for which defendants or their vendees are currently using it.

Pulaskite occurs all over the Fourche Mountain area and is a "common rock" of that area. The area also contains or has contained in the past substantial deposits of bauxite which is a highly valuable aluminum ore. In years past both bauxite and pulaskite have been extracted, the degree of extraction depending on demand for the materials and market conditions.

The position of plaintiffs is that pulaskite is a mineral, that it was considered as such in 1953 and prior years, and that their reservation extends to the deposit on or in the lands covered by their deed.

The defendants take two positions. They say, first, that pulaskite is not a "mineral" in the technical or scientific sense of the term and for that reason the reservation should not be construed to extend to the stone deposit. Alterna-

tively, they contend that apart from any scientific characterization of pulaskite as a mineral or non-mineral, it was not generally considered to be a mineral in 1953, and that under ruling Arkansas cases to be mentioned in due course it does not fall within the terms of the reservation.

It appears from essentially undisputed expert testimony and from textbook definitions cited in defendants' brief that where a rock formation consists of a combination of several separate and distinct minerals, geologists and mineralogists distinguish between the constituent parts of the formation and the formation itself considered as a whole. They characterize the constituent parts of the rock as "minerals," and the rock itself as just a "rock" and not a "mineral." To put it simply, the silicon dioxide in pulaskite is a "mineral," but pulaskite itself is not.

■■ The Court is neither qualified nor inclined to quarrel with that distinction as a matter of science or semantics, and it may well play a legitimate part or serve a useful purpose in the technical fields of geology and mineralogy. But the Court does not consider that it is particularly relevant in present context. The scope of a mineral reservation or grant in Arkansas depends ultimately on the intent of the parties, and legal scriveners and lay people buying and selling land and granting or reserving mineral rights do not ordinarily think in the technical terms employed by geologists or mining engineers. So, the first contention of the defendants will be rejected.

As to the second contention of the defendants, it may be noted that the problem of whether a given substance, whether solid, liquid, or gaseous, is included within the general term "minerals" or "mineral rights" appearing in a grant or reservation in a deed is not a novel one in Arkansas. Governing principles have been laid down in a number of ruling Arkansas cases beginning with Missouri Pacific Railroad Co. v. Stro-

hacker, 1941, 202 Ark. 645, 152 S.W.2d 557. Later cases include: Missouri Pacific Railroad Co. v. Furqueron, 1946, 210 Ark. 460, 196 S.W.2d 588; Carson v. Missouri Pacific Railroad Co., 1948, 212 Ark. 963, 209 S.W.2d 97, 1 A.L.R.2d 784; Brizzolara v. Powell, 1949, 214 Ark. 870, 218 S.W.2d 728; Stegall v. Bugh, 1958, 228 Ark. 632, 310 S.W.2d 251; Ahne v. The Reinhart & Donovan Co., 1966, 240 Ark. 691, 401 S.W.2d 565. And in Brizzolara v. Powell, supra, the Court held that the approach taken in Strohacker and later cases has become a rule of property in this State.

Senior Judge Miller of the Western District of Arkansas has dealt with the problem in a number of well reasoned opinions including Dierks Lumber & Coal Co. v. Meyer, W.D.Ark.1949, 85 F. Supp. 157; Middleton v. Western Coal & Mining Co., W.D.Ark., 1965, 241 F.Supp. 407, aff'd 8 Cir., 362 F.2d 48; and Mining Corporation of Arkansas v. International Paper Co., W.D.Ark., 1971, 324 F.Supp. 705. And this writer had occasion to discuss it in Singleton v. Missouri Pacific Railroad Co., E.D.Ark., 1962, 205 F.Supp. 113.

■ The holdings of those cases may be summarized as follows: In construing a mineral grant or reservation in which the mentioning of specific minerals is followed by a general reference to "other minerals" or "mineral rights," the courts of Arkansas do not take an ejusdem generis approach which would limit the scope of the general language to minerals of the same generic class as those specifically mentioned. Rather, the question is treated as being one of fact and is to be answered ultimately by reference to the intent of the parties. It should be emphasized, however, that the intent with which the courts concern themselves is objective or presumed; it is not the subjective intent of either the grantor or grantee. It does not matter what a particular grantor or grantee intended to be included in or excluded from the scope of general terms like "minerals" or "mineral rights." The question is whether at the

time of the grant the substance in question was generally considered in the area to be a "mineral." If in common speech and usage at the time of the grant the general terms that have been mentioned included the substance in question, then the substance is considered to be included in the grant or reservation; otherwise, it is not.

The burden in this case is upon the plaintiffs to prove by a preponderance of the evidence that their reservation included the pulaskite here in controversy. They have proved beyond question that in 1953 and for many years prior thereto both the presence of the pulaskite and its commercial uses and value were well known in Pulaski County. That, however, is not sufficient because under Arkansas law the facts that a valuable substance is on or in the ground and that its presence and value are well known do not necessarily make the substance a "mineral" in the context of conveyancing. Plaintiffs must go further and establish that in 1953 pulaskite was generally regarded as a mineral, and that in common or commercial speech and usage in this area the term "mineral" or "mineral rights" included stone such as pulaskite.

The Court finds that the plaintiffs have not discharged that burden of proof. The Court does not find from a preponderance of the evidence that in 1953 stone material such as pulaskite was generally considered to be a "mineral," or that in commercial or legal usage a general reference to "minerals" or "mineral rights" in a deed or lease would have been understood as including such stone.

On the contrary, there is quite persuasive testimony from individuals who have dealt with Pulaski County stone for years and have made extensive use of it that granite, including pulaskite, was not considered to be a "mineral" in 1953. And the Court doubts that it is so considered today.

While, as stated, the rights of the parties are governed by the law of Arkansas, the Court deems it worthwhile to mention the recent decision of the Supreme Court of Texas in Acker v. Guinn, Tex.1971, 464 S.W.2d 348. Factually, that case is the obverse of this one since there the Court was concerned with a mineral grant whereas here the Court is concerned with a mineral reservation, but the underlying problem is the same. In Acker there was a grant of an undivided one-half interest in the oil, gas "and other minerals" underlying certain lands in Cherokee County. The question was whether that grant extended to a substantial deposit of low grade iron ore lying near the surface of the ground. The ore in its natural state was not suitable for the manufacture of pig iron, and its principal use was as a base for roads, although it did have a number of other uses. In a well written opinion the Court held that unless a contrary intention clearly appears a mineral conveyance or reservation should not be construed so as to include minerals which cannot be extracted or utilized without destroying the surface of the land, as by stripping or quarrying. It is interesting to note in connection with that case that one of the considerations moving the Supreme Court of Arkansas in Carson v. Missouri Pacific Railroad Co., supra, to hold that an early general reference to "minerals" or "mineral rights" did not include bauxite was the inconsistency between use of the surface of the ground and exploitation of the bauxite deposit.

From what has been said, it follows that the plaintiffs cannot prevail, and a judgment will be entered dismissing their complaint as amended.