2012 Ark. 326

Kenneth O. NICHOLSON
et al., Appellants

v.

UPLAND INDUSTRIAL DEVEL-
OPMENT COMPANY and
Seeco, Inc., Appellees.

No. 11–1106.

Supreme Court of Arkansas.

Sept. 13, 2012.

Blair & Stroud, Batesville, by: Robert D. Stroud and Barrett S. Moore; Bowen Law Firm, Little Rock, by: Martin W. Bowen; Cambiano Law Firm, Cambiano, by: Joe Cambiano; Simpson, Simpson & Collier, Searcy, by: Winston B. Collier; Dunn, Nutter & Morgan, LLP, by: Mark R. Adams, for appellants.

Daily & Woods, PLLC, Fort Smith, by: Jerry L. Canfield and Colby T. Roe, for appellee SEECO, Inc.

Hardin, Jesson & Terry, PLC, Fort Smith, by: Rex M. Terry, for appellee Upland Industrial Development Company.

JIM GUNTER, Justice.

Appellants appeal the order of the circuit court dismissing their claims and quieting title to mineral interests, including oil and gas rights, in appellee Upland Industrial Development Company, Inc. On appeal, appellants argue that the circuit court erred in (1) interpreting the *Strohacker* doctrine and applying the doctrine to the facts of this case; (2) placing the burden of proof on appellants; (3) not giving appellants a jury trial; (4) finding that appellants' claims are barred by estoppel and laches; and (5) granting appellee SEECO, Inc.'s motion for attorneys' fees. We have assumed jurisdiction of this case, as it involves a significant issue needing clarification or development of the law or overruling of precedent; therefore, we have jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(b)(5). We affirm.

By warranty deed dated February 16, 1903, St. Louis, Iron Mountain and Southern Railway Company conveyed certain property in White County to Western Tie & Timber Company. The deed contained the following reservation: "Also reserving all coal and mineral deposits in and upon said lands." Upland Industrial Development Company (Upland) is the successor in interest to St. Louis, Iron Mountain and Southern Railway Company, and appellants are the successors in interest to Western Tie & Timber Company. In 2010, a dispute arose over the ownership of the oil and gas rights in the subject property, and appellants Kenneth and Cynthia Nicholson filed suit to quiet title. The complaint named T.S. Dudley Land Company, Inc., Upland, and SEECO, Inc., as defendants.[1] In brief, the Nicholsons argued that the above reservation did not reserve rights to oil and natural gas on the property, while Upland argued that the reservation did reserve rights to oil and gas.

Appellee SEECO, which had acquired oil and gas leases from both the Nicholsons and Upland, filed a petition for interpleader and third-party complaint, in which it acknowledged its obligation to pay royalties to the rightful owners of the oil and gas rights and asked the court to determine the ownership of the oil, gas, and minerals underlying the subject property. SEECO was allowed to file a third-party complaint and deposit royalty sums into the registry of the court; a total of $479,216.72 was eventually deposited with the court. SEECO also named a number of third-party defendants (who are also now appellants) who had not been named in the original complaint but who may have an interest in the minerals at issue.

After a bench trial, the court entered an order on July 19, 2011, which dismissed appellants' claims to quiet and confirm title in and to the mineral interests underlying the property. The court held that title to the mineral interests, including but not limited to oil and gas rights, was quieted and confirmed in Upland. The court also entered twenty-four pages of findings of fact and conclusions of law to support its decision. Appellants filed a timely notice of appeal from this order on August 12, 2011. More specific facts that are pertinent to the points on appeal will be discussed below.

For their first and second points on appeal, appellants assert that the circuit court both misunderstood and misapplied the *Strohacker* doctrine. In *Strohacker*, this court examined reservations in deeds conveyed in 1892 and 1893 and held that the reservations were sufficient to reserve oil and gas rights only "[i]f the reservations had been made at a time when oil and gas production, or explorations, were general, and legal or commercial usage

---

1. T.S. Dudley Land Company, Inc., was later dismissed from the case.

had assumed them to be within the term 'minerals.'" *Missouri Pac. R.R. Co. v. Strohacker*, 202 Ark. 645, 650–51, 152 S.W.2d 557, 561 (1941). In that case, this court held that a reservation of "all coal and mineral deposits" did not reserve rights to oil and gas because, at that time, it was not the "general construction" to deem oil and gas as minerals. *Id.* at 656, 152 S.W.2d at 563. In *Stegall v. Bugh*, 228 Ark. 632, 310 S.W.2d 251 (1958), this court reiterated that

the meaning which this court has heretofore and should hereafter give to the word "mineral," in connection with its use in situations similar to those of this case, is governed not by what the grantor meant or might have meant, but by the general legal or commercial usage of the word at the time and place of its usage.

*Id.* at 634, 310 S.W.2d at 253. And in *Ahne v. Reinhart and Donovan Co.*, 240 Ark. 691, 401 S.W.2d 565 (1966), this court clarified that

[f]or the past twenty-five years it has been the settled rule of this court that, where there is ambiguity as to minerals actually embraced in instruments purporting to convey or to reserve certain unspecified minerals under generalized terms as to minerals, a fact question is presented as to the true intent of the parties; and in such cases the contemporary facts and circumstances surrounding the execution of the instrument are admissible in evidence on the question. Furthermore, the intent of the parties will be determined so as to be consistent with and limited to those minerals commonly known and recognized by legal or commercial usage in the area where the instrument was executed.

*Id.* at 696, 401 S.W.2d at 568–69.

In the present case, appellants first argue that the circuit court misinterpreted the *Strohacker* doctrine, specifically citing two paragraphs from the court's order. After quoting the general rule from *Strohacker*, namely that a reservation of mineral rights will include oil and gas if the reservation is made at a time when oil and gas production, or explorations, are general, and when legal or commercial usage assume them to be within the term "minerals," the court stated that

[t]he *Strohacker* court did not say that if there were no proof that production or explorations were general and legal or commercial usage assumed oil and gas to be within the term "minerals," that the appellant could not prevail under any circumstances.... Moreover, in *Strohacker*, the court did not say that the exploration or production, or the legal or commercial usage of oil and gas assumed them to be included in "minerals," would have to be limited to the county in which the property is located. The Court finds that to be a misconception, which is apparently commonly held.

Thus, appellants argue, according to the circuit court, even if there was no general exploration for or production of oil or gas in White County, nor any commercial or legal usage of the terms in White County, at the time the deed was conveyed, the appellees can still prevail. Appellants argue this is error because the circuit court "eliminated the first prong of the *Strohacker* doctrine" by not requiring Upland to prove production or exploration of oil and gas at the time of the deed and "modified the second prong of the *Strohacker* doctrine by not limiting Upland's proof of legal or commercial usage of the term 'mineral deposits' in White County in February of 1903." Instead, appellants assert, the court erroneously concluded that "the 'area where the instrument is executed' in this case includes White County and surrounding counties, including Pulaski County, the place where the instru-

ment was, in fact, executed by the grantor, according to the acknowledgment."

Appellants also argue that the circuit court misapplied the *Strohacker* doctrine to the facts of this case by finding that oil and gas rights were reserved by the reservation in the 1903 deed. Appellants claim that there was no evidence presented to show that there was exploration for oil and gas before February 1903 in White County, nor was there any proof that the legal or commercial usage of the term "mineral deposits" included oil and gas in White County in February 1903. Appellants also take issue with numerous exhibits offered by Upland and admitted by the court, including newspaper articles, advertisements, books, and census information, and argue that virtually all of this evidence was irrelevant, as it concerned surrounding areas and not specifically White County. With regard to those exhibits that were specific to White County, appellants argue that the exhibits failed to demonstrate the production of or exploration for oil and gas, or the legal or commercial usage of the term "mineral deposits," in White County in February 1903.

In response, Upland argues that there was "abundant evidence" presented in this case showing that oil and gas were, in fact, commonly recognized minerals in White County and the surrounding area at the time the warranty deed was conveyed. Upland contends that the newspaper articles and other evidence before the court established that "exploration for gas and oil was robust in the area of White, Pulaski, Conway, Pope, and Independence Counties prior to 1903," and that all these counties should be considered a part of the area where the property is located. Upland cites *Ahne, supra,* to support the court's consideration of evidence of exploration for oil and gas in the general area and not just White County. Upland also asserts that the newspaper articles and other exhibits all addressed the primary issue in this case and were properly admitted by the court.

We hold that the circuit court did not misinterpret or misapply the *Strohacker* doctrine. First, the court's order correctly quotes the holding of *Strohacker,* and the court's analysis fits within the fact-finding framework dictated by *Strohacker* and its progeny. Second, with regard to the circuit court's factual findings, the appropriate standard of review on appeal from a bench trial is not whether there is substantial evidence to support the findings of the circuit court, but whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *City of Rockport v. City of Malvern,* 2010 Ark. 449, 374 S.W.3d 660. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Evidentiary rulings are a matter of discretion and are reviewed only for abuse of that discretion. *See Taylor v. Taylor,* 345 Ark. 300, 47 S.W.3d 222 (2001).

With this standard in mind, we hold that the circuit court's finding was not clearly against the preponderance of the evidence. Appellants' primary contention is that the evidence should have been limited to White County only; however, we disagree and find no error in the court's assessment, based on the evidence presented, that by March 6, 1903, the date of the execution of the warranty deed, oil and gas were commonly known and recognized in White County and in the general area of White County. We also find no error in the court's conclusion that the legal use in White County and the surrounding area assumed oil and gas to be included in the term "minerals." Finally, we find no abuse of discretion in the court's admit-

tance of those exhibits it found to be relevant to the ultimate issue in this case.

■ For their next point on appeal, appellants assert that the circuit court erred in placing the burden of proof on them at trial. Prior to trial, appellants filed a motion in limine asking the court to find that, as the proponent of the alleged reservation of minerals, Upland had the burden of proving that oil and gas were within the scope of the reservation at issue. In response, Upland argued that this was an action to quiet title and asserted that the party seeking to quiet title has the burden of proof. Thus, Upland contended, it was appellants who had the burden of proving title to the mineral rights in the instant case. At the pretrial hearing, the parties advanced the same arguments, with Upland noting that because the trial was going to be a bench trial instead of a jury trial, there would be no instruction on burden of proof. The court concluded that the burden of proof would be on appellants.

On appeal, appellants again argue that the burden of proof should have been on Upland. In response, Upland again asserts that, generally, the party seeking to quiet title has the burden of proof, citing, inter alia, *Bobo v. Jones,* 364 Ark. 564, 567, 222 S.W.3d 197, 200 (2006) ("In a quiet-title action, the moving party's burden is to establish the true ownership of the land in question."). Upland also argues that this is not really a meritorious issue on appeal, as the practical effect of the court's ruling was simply that the appellants proceeded first. Upland argues that the court made its findings after a full trial on the merits and that appellants have not demonstrated how the court's findings would have been different had the initial burden of proof been placed on Upland.

We agree with Upland that both parties in this case had ample opportunity to present evidence on the issue to be decided by the court and, especially because this was a bench trial, appellants have not demonstrated how they were prejudiced by the ruling. Thus, we find no reversible error on this point.

■ Next, appellants contend that the circuit court erred in not giving them a jury trial. Entitlement to a jury trial is a legal issue centered on constitutional interpretation and is reviewed de novo on appeal. *See First Nat'l Bank of DeWitt v. Cruthis,* 360 Ark. 528, 203 S.W.3d 88 (2005). The constitutional right to a jury trial is limited to those cases which were so triable at common law. *Baptist Health v. Murphy,* 2010 Ark. 358, 373 S.W.3d 269. This court has clearly stated that article 2, section 7 of the Arkansas Constitution does not assure the right to a jury trial in all possible instances, but rather in those cases where the right to a jury trial existed "when our constitution was framed." *Cruthis,* 360 Ark. at 534, 203 S.W.3d at 92 (quoting *Jones v. Reed,* 267 Ark. 237, 590 S.W.2d 6 (1979)).

This case was originally scheduled for a jury trial; however, on April 12, 2011, Upland filed a motion for an amended scheduling order and requested a bench trial. Appellants responded, arguing that the case was "as much an ejectment case as a quiet title case" and asking that the motion to amend the scheduling order be denied. At the pretrial hearing, Upland argued that because the case centered on a legal issue of an equitable nature, it should be decided by the court in a bench trial. Appellants again argued that the case could be classified as an ejectment case, but the court disagreed. The court found that there was no right to a jury trial in the case and that the case would be heard by the court.

On appeal, appellants again assert that this case was, in essence, an ejectment action, and as such, the appellants had a

constitutional right to trial by jury. In response, Upland contends that this was a quiet-title action, which is cognizable in equity, thus it was properly decided by the court sitting as the trier of fact.

This court has explained that ejectment is an action for possession filed in circuit court by one who has title to the property, while a quiet-title action is filed in chancery court by one who is in possession and wants title to the property declared to be in him. *Pearman v. Pearman*, 144 Ark. 528, 222 S.W. 1064 (1920).

> The equity jurisdiction to quiet title, independent of statute, can only be invoked by a plaintiff in possession, unless his title be merely an equitable one. The reason is that where the title is a purely legal one and some one else is in possession, the remedy at law is plain, adequate, and complete, and an action of ejectment cannot be maintained under the guise of a bill in chancery. In such case the adverse party has a constitutional right to a trial by a jury.

*Id.* at 531, 222 S.W. at 1065. While appellants continue to assert that their complaint was essentially an ejectment action, we find no error in the court's finding that this was an action to quiet title and, thus, no constitutional right to a jury trial was present.

Appellants also assert on appeal that the circuit court erred in finding that their claims were barred by estoppel and laches. In its order, after finding that by the date of the execution of the warranty deed, oil and gas were commonly known and recognized minerals in both White County and the general area of White County, the court concluded that appellants were also barred from recovery pursuant to the doctrines of estoppel and laches. The court found:

> The reservation in the deed in the chain of title was recorded in 1903. Two subsequent deeds in the chain of title specif-

ically referred to the previous reservations of minerals. When the Nicholson Plaintiffs acquired Section 21 in 1994, they were experienced in the abstract business, and therefore, were knowledgeable with respect to real property titles. Nonetheless, there is no evidence of any effort on their part to determine whether minerals were included in their acquisition of the property. Indeed, Mrs. Nicholson testified that minerals were excluded by the title insurance company that issued the title policy insuring title in the transaction. The doctrine of laches is a strong defense in cases involving oil, gas, and other mineral interests.

On appeal, appellants argue that there was no proof that Upland detrimentally relied on the landowners' inaction, which is a necessary element of both estoppel and laches; thus, the court's finding on this issue was clearly erroneous. Upland, on the other hand, argues that there was no effort to contest the ownership of mineral rights until approximately 107 years after the 1903 warranty deed was conveyed, despite the fact that there were at least two reservations of mineral interests referred to in deeds in the chain of title of the property at issue in this case. Therefore, Upland contends, the court did not err in finding that appellants' claim was barred by estoppel and laches. We decline to address the merits of this argument, however, because the circuit court's finding on estoppel and laches is merely an alternative basis for its ruling in Upland's favor. Because we have already affirmed the court's finding on the reservation in the deed, we need not address this alternative basis for its ruling.

For their final point on appeal, appellants argue that the circuit court erred in granting SEECO's motion for attorneys' fees. On September 20, 2010,

SEECO filed a motion requesting payment of attorneys' fees from the funds it had deposited into the court's registry. This motion was made pursuant to Ark. R. Civ. P. 22(b), which provides:

A plaintiff who disclaims any interest in the money or property that is the subject of the interpleader action shall, upon depositing the money or property in the registry of the court, be discharged from all liability. The court may make an award of reasonable litigation expenses, including attorneys' fees, to such a plaintiff.

SEECO requested an award of $5,190.03, which represented the attorneys' fees and costs it had incurred as a result of interpleading the suspended royalties. After the bench trial was held, the court entered an order granting SEECO's motion for attorneys' fees in the amount requested.

On appeal, appellants argue that SEECO was not a disinterested party, but instead continued to observe the case and attempted to aid Upland's attorneys during the trial. Because SEECO was not disinterested, appellants contend, the court abused its discretion in awarding attorneys' fees. In response, SEECO first observes that Upland, who prevailed at trial, did not object to or appeal from the award of attorneys' fees. SEECO also argues that, contrary to appellants' assertions, it was and is disinterested in the property at issue. Finally, SEECO disagrees that its minimal participation at trial was an attempt to aid Upland's attorneys; instead, SEECO merely recognized a witness's error and brought the error to the court's attention, to the benefit of both parties and the court. Thus, SEECO argues, the court did not abuse its discretion in awarding attorneys' fees.

A threshold issue for this court to address is whether appellants have standing to appeal the award of attorneys' fees. In *Springdale School Dist. No. 50 v. The Evans Law Firm, P.A.*, 360 Ark. 279, 283, 200 S.W.3d 917, 920 (2005), this court explained:

This court has held that a person must have suffered an injury or belong to a class that is prejudiced in order to have standing to challenge the validity of a law. *Morrison v. Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997); *Hamilton v. Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994). Stated differently, plaintiffs must show that the questioned act has a prejudicial impact on them. *Chapman v. Bevilacqua*, 344 Ark. 262, 42 S.W.3d 378 (2001). Moreover, our courts have recognized the concept of "standing to appeal." *See Arkansas State Hwy. Comm'n v. Perrin*, 240 Ark. 302, 399 S.W.2d 287 (1966); *see also First Nat'l Bank v. Yancey*, 36 Ark. App. 224, 826 S.W.2d 287 (1991). Only a party aggrieved by the court's order can appeal that order. *Beard v. Beard*, 207 Ark. 863, 183 S.W.2d 44 (1944).

In the present case, the attorneys' fees were paid out of the interpleaded funds, which belong to Upland, according to the court's order. Thus, appellants have not been aggrieved by the court's order, and we hold that they have no standing to raise this argument on appeal.

Affirmed.

BAKER, J., not participating.