J. B. WILSON *v.* JOAN RODGERS, NANCY TULLOS, KALYNN HARRIS, MRS. KATHERINE WILSON, KATHERINE WILSON, ADMX. ESTATE OF GEORGE WILSON, DECEASED

73-12 494 S.W. 2d 484

Opinion delivered May 21, 1973

*Milton G. Robinson,* for appellant.

*Macon, Moorhead & Green,* for appellees.

CARLETON HARRIS, Chief Justice. This is the second appeal of this case[1] which relates to whether certain realty belonged to a partnership composed of two brothers, or whether such realty belonged to only one of the brothers. There is no need to further detail the facts as these previous opinions fully discuss the factual situation. After first affirming the decree of the Arkansas County Chancery Court, this court, on rehearing, held that the case had been tried upon an erroneous theory, noted that the evidence was deficient in several particulars, set aside our opinion, and remanded the case back to the Arkansas County Chancery Court for further consideration. In doing so, we directed the trial court to permit additional evidence to be offered on five points, as follows:

"1. How the record title to the lands was held, and the identity of the grantee in any unrecorded deeds conveying the property.

2. The reasons for taking the title in the names of the grantees of all conveyances of lands alleged to be partnership property, rather than in the names of the two alleged partners.

3. The names in which bank accounts were held, the source of funds deposited thereto, the person authorized to draw checks on each such account, the arrangements between the depositors and the banks, and the disposition of the funds deposited.

4. The source of the funds used to pay the purchase price of any of the lands in which the grantee in the deeds when purchased was George Wilson.

5. Any accountings between the partners and withdrawal of partnership funds by the individual partners for their own account."

Perhaps we did not make clear in our per curiam order on rehearing exactly what the trial court should do,

---

[1]*Wilson* v. *Rodgers, et al,* 250 Ark. 335, 468 S.W. 2d 739 (April 5, 1971). Rehearing granted, 250 Ark. 356 (June 21, 1971).

for it is evident that the chancellor did not construe the order as we intended. Apparently, the trial court was of the view that it had been directed to permit evidence on the five points heretofore enumerated, and if the additional evidence was not sufficient to justify a different conclusion, the original opinion of this court would stand. That this is true appears evident from the comments of the chancellor on retrial. As to point one, the appellees introduced a fourth warranty deed dated January 15, 1946 from C. F. McPherson and wife to George Wilson[2], but the identity of the grantee in the remaining tract of land was not shown by either side and the court, summing up as to one point, stated:

> "So, as to Point 1, this Court is of the opinion that except as herein noted no such further evidence was elicited or introduced as would change the balance of the sufficiency of the evidence to meet the burden of proof or the burden of persuasion."

As to point two, the court found that no further evidence was offered on retrial, and accordingly only the evidence introduced in the original trial would have any bearing on the sufficiency of the evidence. "Therefore, retrial did nothing to dispose of the dilemma of persuasion."

As to point three, the trial court found that the evidence offered by appellant "is not substantially different from that introduced in the original trial." Though stating that it was somewhat more comprehensive in scope, the chancellor then stated that such evidence *"in and of itself* (our emphasis) does not sufficiently convince this court as to the partnership theory of the ownership of the land."

As to point four, the court found that the evidence offered by appellant was no more enlightening on the matter of the source of funds, or whose funds purchased the land than was the evidence in the original trial. The court then said, "This court does not believe sufficient *additional evidence on retrial* (Our emphasis) has been introduced to support a finding of fact that the funds used to pay the purchase price of the lands at the time of

---

[2]In the original trial, it developed that George Wilson was the grantee in three of five conveyances at issue.

purchase, in which George Wilson was the grantee in recorded conveyances, and even as to the one tract where there was no recorded instrument, where in fact parthership funds notwithstanding that the source of those funds came from the partnership."

As to point five, the court commented that there had been no additional evidence.

Finally, the court stated:

"The Court is of the opinion that the finding of the majority of the Supreme Court that the overall testimony left the circumstantial evidence as to ownership so evenly balanced that it could not be said that a preponderance lay either way is the 'law of the case.' *That therefore that finding of the Court on appeal as to the sufficiency of the evidence controls the decision of this Court.* (Our emphasis) This Court accordingly is not persuaded by the evidence introduced on retrial that there is a change in the sufficiency of the evidence."

We think it is apparent from the findings set out that the chancellor, though stating that the majority opinion, dissenting opinion and opinion on rehearing were read many times, in rendering his decision, did not consider the entire record, but only whether the additional evidence was sufficient to change the original result (both in the trial court and supreme court). This is why it appears that our per curiam order was evidently not clear for, in granting the rehearing, we intended that our original opinion be set aside, and in remanding the case, intended that the chancellor consider *all* of the evidence, presented at both the first and second trials, in rendering his decision.

The per curiam opinion does not flatly state that the case was tried on an erroneous theory, but the language of the opinion, we think, clearly indicates that this was the view of the court. For instance, after stating that the general rule in equity cases is that, with all the record fully developed, we generally decide the case here instead of remanding it to the chancery court, we then stated:

"Yet there are exceptions. This court has the power, in furtherance of justice, to remand any case in equity for further proceedings. *Carmack* v. *Lovett,* 44 Ark. 180. We have done this when the chancery court had based its decision on an erroneous theory. ***

"When we can plainly see what the rights and equities of the parties are, we will not remand a chancery cause. *Pickett* v. *Ferguson,* 45 Ark. 177, 55 Am. St. R. 545. On the other hand, when it is clear that the cause was tried in the chancery court upon an erroneous theory, and we are unable to determine from the evidence before us the decree that should have been rendered, we will, in furtherance of justice, remand the cause to be reopened, to permit further proof so the case may be determined upon the proper principles. *Long* v. *Charles T. Abeles, supra* (on rehearing). In *Fordyce* v. *Vickers, supra,* we said:

'But where the chancellor has decided a case upon an issue involving virtually a question of law, in which we find that he was in error, and leaves undecided other issues in the case involving questions of fact, which he is probably better able to pass upon by reason of his greater familiarity with the circumstances and conditions surrounding said issues, this court in its discretion may remand the case for his decision upon said issues of fact. Under the circumstances of this case, we deem it wise to remand the cause for a determination by the chancellor of the matters relative to the improvements, taxes, and rents.' ***

"Even when all the parties tried a case upon an erroneous theory and the chancery court decided the case upon that theory, we have exercised our discretion to remand such a case so that pertinent facts, not fully developed, might be ascertained. *Brizzolara* v. *Powell,* 214 Ark. 870, 218 S.W. 2d 728. ***

"Appellant filed an answer to appellee's original complaint, in which he alleged that he was not wrongfully interfering with appellee's use and control

of the land involved here, because it was a partnership asset of which he was properly in control and in which he had a partnership interest. He filed a cross-complaint against the appellee widow and heirs in which he alleged that all assets and property held in the name of George Wilson, with minor exceptions, were owned by a partnership consisting of George Wilson and J. B. Wilson, that the legal title was held by George Wilson in trust for the partnership and the partners, that land held in the name of George Wilson would constitute a fraud, actual or constructive, which would impress a trust upon the property in his favor. He asked that title to a one-half interest be vested in him, subject to mortgages and to claims of creditors against the estate of George Wilson.

"A reading of the chancellor's opinion discloses that the question of title to the real estate must have ultimately been treated as if the determination of the case turned upon the existence of a trust ex maleficio or resulting trust. Every authority cited in this opinion has to do with an alleged trust, either constructive or resulting. None relates to the situation where partnership funds were used in paying the purchase price. ***

"We certainly agree that neither a constructive nor resulting trust was established by the evidence. Inasmuch as the authorities upon which the chancellor rested his finding were based upon this decision, we cannot be certain that there was a clear-cut decision on the partnership theory."

The difference, of course, is in the quantum of proof required. The constructive and resulting trust theory requires clear, cogent, and convincing evidence while establishing a trust under partnership law would require only a preponderance. Of course, it is well established and all parties concede that the two brothers operated their business as a partnership. The chancellor, on retrial, clearly understood the question at issue in the litigation, for in his opinion, he stated:

"There is no doubt the brothers were partners and no doubt that most all of their funds came from the

partnership. But merely because all funds either partner had came from that partnership does not necessarily mean they were partners in land bought with funds that either drew from the partnership. There is nothing in the retrial that indicates that George Wilson could or could not have bought the land from funds he withdrew as his own from the partnership source. The whole of the problem is not that the land was bought with funds derived from the partnership, for this is true. It is rather whose money purchased the lands. If partnership funds were used to purchase the lands as a partnership asset, then it is partnership lands, but if George Wilson purchased the lands for himself from funds he withdrew for himself from the partnership then the lands were George Wilson's."

This is exactly the issue.

Since it is evident that the chancellor considered only whether the additional evidence at the second trial justified a change in the findings, rather than determining the litigation from the full record, and since we consider that the testimony of all the witnesses leaves the evidence as to the ownership so evenly balanced that it cannot be said that a preponderance lies either way, we, though reluctantly, remand the case for a determination as to this point, without additional testimony, but based upon the entire record.

Let it be said that, in ordering the case remanded, we do not, in any sense, mean to indicate, nor imply in any manner, that the result was either correct or erroneous; we only desire that the findings be based upon the entire record.

It is so ordered.

GEORGE ROSE SMITH, LYLE BROWN, and JOHN A. FOGLEMAN, JJ., dissent.

GEORGE ROSE SMITH, Justice, dissenting. Basically, I disagree with the majority's assertion, in the next to the last paragraph of the opinion, that "the testimony of all

the witnesses leaves the evidence as to the ownership so evenly balanced that it cannot be said that a preponderance lies either way."

That assertion is the cornerstone of the majority's decision to remand the case to the chancellor for a decision about where the weight of the evidence lies. Quite obviously the chancellor's determination will not be open to review by this court. That is so because all the evidence is now before us. If a clear preponderance of the proof favors one side or the other, nothing is to be gained by sending the case back to the chancery court, because we can and should end the litigation right now by announcing a decision in accordance with the weight of the evidence. Hence the majority's election to remand the case to the trial court necessarily and logically depends upon the finding that the testimony is so evenly balanced that the preponderance must be determined by the chancellor (who had the slight advantage of hearing the additional witnesses who testified at the second trial).

In my opinion the evidence now preponderates decidedly in favor of appellant. We might have made that determination upon the first appeal except for the deficiencies of proof that were discussed in the per curiam opinion on rehearing. At the end of that opinion we listed five specific issues which might well have been clarified by the presentation of evidence not heard at the original trial.

Our doubts about the deficiencies in the proof have now been set at rest. Despite the efforts of able counsel to find the missing proof, it is now apparent that hardly any further clarification of the issues is possible. The evidence is simply not available. The case must therefore be finally decided, either here or in the trial court, upon the present record.

I think it should be decided here, for I believe that the clear weight of the competent evidence supports the appellant's position. There is no doubt that a partnership existed between the two brothers. There is no doubt that funds derived from the partnership were used to purchase lands that were deeded to George Wilson only. Hence,

unless a contrary intention appears, the lands became partnership property. Ark. Stat. Ann. § 65-108 (Repl. 1966). In addition to the statutory presumption there is the testimony of witness after witness that George Wilson repeatedly stated that there was a partnership and that the lands belonged to him and to his brother. Such declarations were unquestionably competent evidence, as statements against interest.

On the other hand, there is hardly any competent proof in favor of the appellees. The deeds, of course, were made to George alone, but when the partnership issue is taken into account the form of the conveyances becomes immaterial. Proof that the purchases were made with funds derived from the partnership established a prima facie case for the appellant, shifting to the appellees the burden of going forward with the evidence. That burden was not met. The chancellor, I submit, misinterpreted the issues when he based his decision upon this reasoning in his opinion: "There is nothing in the retrial that indicates that George Wilson could or could not have bought the land from funds he withdrew as his own from the partnership source. The whole of the problem is not that the land was bought with funds derived from the partnership, for this is true. It is rather whose money purchased the lands. If partnership funds were used to purchase the lands as a partnership asset, then it is partnership lands, but if George Wilson purchased the lands for himself from funds he withdrew for himself from the partnership then the lands were George Wilson's." The defect in the chancellor's reasoning lies in the concession that there is nothing in the proof to show whether George bought the lands with partnership funds or with his own funds derived from the partnership. The gap in the proof is fatal to the appellees' position, for they had the burden of overcoming the appellant's prima facie case.

There remains, as far as I can see, no other proof to support the appellees except George's repeated statements, made to his accountant, to Mrs. Lillian Young, and to others, that he was the owner of the land. Those statements, however, were inadmissible, being self-serving declarations. *Beichslich* v. *Beichslich,* 177 Ark. 47, 5 S.W. 2d 739 (1928); *Waldroop* v. *Ruddell,* 96 Ark. 171, 131 S.W. 670 (1910).

When the deeds and the self-serving declarations are laid aside, I find no proof to offset the strong case made by the appellant. It is regrettable that the majority, in delegating to the chancellor the responsibility for deciding the case, have not seen fit to set forth the competent evidence which is thought to be so strong as to leave the preponderance in doubt. That course casts upon me the burden of proving the negative, which is not ordinarily a simple task. Here, however, the majority do recognize that the facts are fully discussed in the three opinions delivered upon the first appeal. I have reread those opinions carefully, and if they recite any competent evidence tending to support the appellees' position as the record now stands, I have not found it.

Brown and Fogleman, JJ., join in this dissent.